## ARAYO vs. CURREL.

If the owner of a vessel, residing in New-Orleans, sends her from Vera Cruz to Havana, he will be liable for the *torts* of the master, not according to the laws of Louisiana, but those of Mexico.

The courts of Louisiana having knowledge of the laws of Spain, and that they, before the revolution in South America, were the laws of the new republics, will decide cases according to those laws, unless they are shown to be abrogated.

APPEAL from the court of the first district.

The petition set forth that the plaintiff and child, with a number of other proscribed Spaniards, embarked at the port of Vera Cruz, on board the ship Belle for Havana, of which ship McKown was master and the defendant owner: that, after being out about thirty days, the ship grounded near the mouth of Rio de Lagarte, on the coast of Yucatan: that the captain told the

passengers, with the exception of twenty, to go ashore for the purpose of lightening the ship and getting provisions : that while on shore the captain set sail and left them exposed not only to privations and hardships, but to imprisonment, for having returned to the Mexican territory in contravention of her laws. The plaintiff and child, in order to procure a passage to Havana, went to Sisal, from thence to Merida, whence they embarked. The plaintiff claimed three hundred dollars damages, and to be reimbursed the passage money which he had paid at Vera Cruz.

The facts stated in the petition were fully proved on the trial, and the answer set up the following grounds of defence :—

1. That the owner was not bound to return the passage money after the voyage had commenced, and,

2. That the act of the captain in leaving the plaintiff and child on shore, was not within the scope of his agency, and that the owner could not be held liable.

There was judgment for the plaintiff and the defendant appealed.

*Duncan*, for the appellant cited, Abbot, page

276, 3d Johnson, 338, 3d Pickering, 23, 24,
25, and C. C. art. 2299.

*Preston*, for appellant.

MARTIN, J. delivered the opinion of the court. This case turns upon the same principles as that of Malpica vs. Currel, lately decided in this court.

The first question it presents relates to the law by which the rights of the parties are to be governed.

The defendant sent his vessel from New-Orleans to Vera Cruz, to be employed in the transportation of passengers—and the master there entered into a contract for their passages, which being within the scope of his authority, must be as binding on the defendant, as if it had been entered into by him personally. This proposition is, however, strenuously combatted by his counsel, who contends that the master had no authority to bind the owner absolutely, but only to the amount of the value of the vessel and freight ; because the laws of the country, in which the owner has his domicil, fix the measure of his responsibility, on all contracts made by the master ; that the question, whether an agent has

exceeded his powers, must be solved by the
laws of the place in which he received them.

The admission of this position would still
present the question, whether, according to
the laws of Louisiana, the agent who con-
tracted in Mexico, in the manner the master
did in the present case, exceeded his powers;
and the question would still remain open as
to the laws which ought to govern. So it
would be under the provision of our code, re-
lied on, that the principal is bound only for
the acts of his agent which he could have
prevented. So, if it be held that the law of
Mexico is to govern a contract directed to be
made there, the question would not be whe-
ther the agent exceeded his powers, but what
responsibility the principal would have incur-
red, had he contracted personally.

This has appeared to us the sole question
for our examination and solution.

The master was sent to Vera Cruz to take
passengers on board of the vessel he com-
manded. He did so. It is not pretended he
made any other than the agreement usual on
such an occasion. Whether the property
was received and put on board by the owner
or master would make no difference. If the

last was committed out of the presence of the owner, his liability would be the same. No question therefore arises as to the authority confined being exceeded. The owner is sought to be made liable, not on the contract, but for a *tort* committed by the master, acting within the scope of his powers, in the execution of the contract.

The law relied on which furnishes the owner with an exemption on account of the misfeasance of the master and crew, on the surrender of the vessel and freight, would cause the same immunity had the owner contracted personally. If we understand the matter rightly, the immunity is independent entirely of the agreement having been entered into by the agent. For example, in England, where such a rule prevails, we do not understand that there could be the slightest difference in the responsibility of the owner for the *torts* of the master, whether the contract was for passage or freight, whether the contract was entered into with one or the other.

We repeat, therefore, that we cannot see how the question whether the agent exceeded his powers is at all involved in the inquiry before us. The moment it is admitted or es-

Eastern District.
*June*, 1830.

ARAYO
*vs.*
CURRELL.

tablished that the master's agreement for carrying passengers was on terms such as he was authorized to make, its legal consequences must depend on other principles than those of the law of the contract of mandate: the agreement must have the same effect, as if entered into with the owner personally.

If then the defendant had gone himself to Vera Cruz, and entered into a contract with a man there which was to be performed in the island of Cuba, would it have been governed by the law of Louisiana ?

╱ Now, if there be a principle better established than any other on the subject of the conflict of law, it is, that contracts are governed by the laws of the country in which they are entered into, unless they be so with a view to a performance in another. Every writer on that subject recognizes it. Judicial decisions, again and again, through the civilized world have sanctioned it. Why then should this case form an exception ? Why should the contract of affreightment, or for the conveyance of passengers, stand on different grounds than those of buying and selling merchandize? Whoever contracts in a particular place, subjects himself to its laws, as a

temporary citizen. The idea that the law of a man's domicil follows him through the world, and attaches to all his contracts, is as novel as unfounded. The proposition was not, indeed, maintained in general terms, but that offered to the court, in relation to the contract, is identical with it, and it is impossible for us not to feel that if the defendant and appellant is to have the contract decided by the laws of Louisiana, it will be equivalent to a declaration of this amount, that an inhabitant of this state carries its laws with him, wherever he goes, and they regulate and govern his contracts in foreign countries—that whether a man contracts with him in Paris or London, our municipal regulations are the measure of the rights and duties of both parties to the contract.

That the legislature of Louisiana may have a right to regulate the contracts of her own citizens, in every country, so long as they owe her allegiance may or may not be true. But where the citizen contracts abroad, with a foreigner, it is evident the rule must be limited in its operation. The legislature may refuse permission to enforce the agreement at home; but abroad, and particularly where

the agreement is entered into, it is valid. The general rule, however, is never to extend the prohibition to contracts made abroad, unless there be an express declaration of the legislative will. Judge Story, in *Reinsdyck* vs. *Hane et al.* quotes with approbation and sanctions the rule, as given by *Casaregis Ratio, est quia statutum intelligitur semper disponere in contractibus intra et non extra territorium suum.* Disc. 130. sect. 14, 16, 21, and 22; 1 *Gallison*, 377.

We, therefore, conclude that as the master was sent with the vessel to Vera Cruz, to take passengers; as he acted as the owner's agent in making the agreement, and this is admitted by the answer; and as the limitation to the responsibility is *resisted* on grounds which would have an equal force, if the agreement had been made with him personally, we are bound, in our inquiry as to the law which governs the agreement, to consider it as made personally by the owner, and it is to be governed, not by the laws of his domicil, but by those of the country in which it was entered into and to be performed. But, although the case does not present the question of the owner's responsibility, in relation to the con-

If the owner of a vessel, residing in New-Orleans, sends her from Vera Cruz toHavana,he will be liable for the *torts* of the master, not according to the laws of Louisiana, but those of Mexico.

tract of mandate, the agent having confined himself within his powers, yet as the argument has placed the immunity claimed by the defendant and appellant on that ground, it is well to notice it more particularly.

If we understood the arguments correctly, it was contended that the laws of Louisiana having put some limitations to the power of the master to bind the owner, any contract of the former, in a foreign country, must be subject to the limitation, and if they be exceeded, there is an end to the latter's responsibility.

Where a general power is confided to an agent, the party contracting with him is not bound by any limitation which the principal may have affixed, at the time or since, by distinct instructions. Now, in the case before us, if instructions be supposed to have been given to the master not to bind the owner beyond the value of the vessel and freight, or for any act which the latter could not prevent, would parties contracting with the former, in a foreign country, be bound by them? We think, it is certain they would not.

Every contract, which by the general maritime law the master can make, is binding on the owner. By putting the former in com-

mand, and sending him abroad, the latter invests him with the general powers masters have as such, and those who contract with him have nothing to do with any private instruction, by which the general power may have been limited. If the limitation arises not from the owner's instructions, but from the particular laws of the country from which the vessel has sailed, must not the consequence be the same? Can these laws limit the master's power more effectually than the owner could, or can they extend farther? We think not. They have no force in a foreign country, where they are presumed to be equally unknown.

*Emerigon,* treating of the case where the master was prohibited from taking *des deniers a la grosse,* during the voyage, examines the question, whether those who furnished them would have an action against the owner He cites all the texts of the Roman laws on which the negative can be maintained, and concludes that if the lender had no knowledge of the prohibitions, the owner would be responsible; that those who contract with him in a foreign country have a right to presume he is clothed with all the powers which

belong to his station. *Bouley Paty* is of the same opinion as to the responsibilities of the owner for the acts of the master appointed by him, whom they put in command, with a special prohibition from making a subrogation of his powers. 2 *Emerigon, ch.* 4, *sec.* 8— *Bouley Paty*, 289.

In another part of his work, *Emerigon* treats of the power of a master to draw bills on his owners, in a foreign port, contrary to the authority given by the ordinance, and he considers he cannot, because he exceeds the powers of his legal mandate. In support of this opinion he cites decisions in opposition to what he says was the former jurisprudence of France, founded on the authority of Valin. He seems to conclude the rule is firmly fixed as he understood it. But we find it was not generally adopted. Bouley Paty states that opinions were divided, and the chamber of commerce of Nantz, in their observations on the code of commerce, observe, it is a question often agitated, and which had been decided in different ways. 2 *Emerigon, ch.* 4, *sec* 11, 458 : 2 *Bouley Paty*, 71. The new code. adopted Valin's doctrine. But *Emerigon*, who is an author of distinction, in treat-

ing of the question, says that although the
master cannot abroad go beyond the legal mandate, provided that his contract (*raccord*)
or the general mercantile laws give him a more extensive power, *a moins que sou rac-card,ou le droit commure, en certant cas, ne lui donne un pouvoir plus étendu.*

The general rule, where there is no statute limiting the owner's responsibility, is that he is responsible for all damages done by the master, while acting within the scope of his powers. *Abbot* states that this is the doctrine of the common and civil law, and so do all the writers we have been able to consult. In *Chancellor Kent's* late work, and in Judge Story's edition of *Abbot*, it is stated that the owner is bound for the whole amount of the injury done by the master or crew, unless where ordinances and statutes have established a different rule. 3 *Kent's Comm.* 172; *Abbot on Shipping, edition* 1829; 1 *Pothier's Obligations,* 451, and 452.

If this question turned on the master's having exceeded his powers, we are inclined to think, that as the general rule authorised him to bind the owner to the extent contracted for, the plaintiff and appellant who contracted

Eastern District.
June, 1830.

ARAYO
vs.
CURRELL.

with him, was unaffected by a limitation, in a statute of another country, of which he could not be presumed to have any knowledge, and to the authority of which he was not subject.

In the former case, we held that the court could take notice of the law of Mexico, although not proved as such; that the province of Louisiana and the vice-royalty of Mexico, having once formed a part of the same government, the laws were the same in each, and the separation of the two countries could not have the effect of destroying the official knowledge the court possessed of that circumstance, and we supposed that the practice in the Atlantic states, was in conformity with this opinion, and that proof was not required in either; that the common law of England was the basis of the law of the other.

In opposition to this doctrine, it has been urged that it is a novel one, unsupported by any adjudged case, and that the practice in the Atlantic states is different from what we conceive.

We have been referred to a note in *Cowen*, 525, in which the reporter professes to bring together the different cases on that head. One of them shows that the courts of Massa-

chusetts presume the common law in New-York to be the same as in their own state; another, that in South-Carolina, Haywood's reports were received as evidence of the common law of North Carolina, upon which we have to remark that this note does not, in our opinion, show that we were in an error. The principle, on which these cases are decided, appears to be true, and the reasoning drawn from them correct. When a court knows nothing of the laws of a country, it presumes them to be the same as those of its own. This is the general rule, and the presumption rests on the ignorance in which it is of any other. If it has judicial knowledge of the law of a particular country, the presumption does not exist. If it has knowledge of what the law once was, it presumed it was not abrogated till this be shown. Having judicial knowledge of the law of Louisiana before the retrocession, and that the law of New-Spain was the same, we have knowledge of the latter, at the retrocession, and must presume it unchanged, till the change be shown.

Perhaps a better reason for deciding according to our own law is, that where we know no other by which our decision may be

Eastern District.
*June,* 1830.

ARAYO
*vs.*
CURRELL.

The Courts of Louisiana having knowledge of the laws of Spain, and that they, before the revolution in South America, were the laws of the new republics, will decide cases according to those laws, unless they are shown to be abrogated.

formed, we must determine according to it, or do so arbitrarily.

It has been urged that giving effect to the Mexican law is to do an injury to one of our citizens, and is contrary to sound policy: but the argument is not entitled, in our opinion, to much weight. Courts of justice, it is true, will not enforce the laws of another country *to the injury* of their own citizens; but if a citizen goes abroad and makes a contract under the law of the place, he must be bound thereby.

We are aware that were this case to be decided under the laws of this state we would have come to a different result: but we have been pressed to reconsider our opinion in the preceding case, and we have deemed it important it should be known, that when our citizens make contracts abroad by themselves or agents, not to be executed in this state; the laws of the place do, and must, regulate their rights and duties under such contracts.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be affirmed with costs.