Georgina Luisa Lókpez Finlay, Plaintiff and Appellant, *v.* José Sotelo Taboas and Gabriela García Quiñones, Defendants and Appellees. Juan Hernández Matos and Marina Rodríguez called as warrantors.

No. 9802. Argued February 15, 1949.—Decided November 16, 1949.

Mariano Acosta Velarde and Daniel Pellón Lafuente for appellant. Brown, Newsom & Córdova for appellees. Federico García Veve for warrantors.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

This is a suit for the revendication of a lot. The action is based on the nullity of the proceeding for judicial authorization by virtue of which the real property referred to was sold while the plaintiff was a minor. As ground for his action, the plaintiff contends that her father, Víctor Luis Lókpez, has always been a Cuban citizen who married plaintiff's mother in the State of Connecticut; that subsequently they changed their residence to New York City where the plaintiff was born on June 4, 1917 and that the plaintiff's mother died there on March 22, 1919; that as a consequence of said death the minor inherited an urban property located in Santurce which consisted at that time of a piece of land of approximately fifteen thousand square meters, described in the complaint; that on August 17, 1934 her father, without consulting her about the transaction he was to perform, and alleging that he was father with *patria potestas* over her, filed in the District Court of San Juan a petition requesting judicial authorization for the sale of a lot of 726.30 square meters which formed part of the main property aforementioned; that by virtue of this proceeding on August 28, 1934 the marshal was ordered to sell at public auction the lot, and in compliance with said order the immovable was

sold on September 21, 1934 for $5,000, to Juan Hernández Matos, who recorded title in the registry of property. Subsequently, on October 28, 1937, by deed executed before Notary Eduardo H. F. Dottin, Juan Hernández Matos sold it to the defendants Juan Sotelo Taboas and Gabriela García Quiñones, who, as alleged in the complaint, are in possession thereof collecting the rents amounting to at least $50 monthly.

As grounds for the nullity of the proceeding for judicial authorization, the plaintiff contends that her father at no time had *patria potestas* over her because the *patria potestas* does not exist in Connecticut, nor in New York where she was born; that it was neither alleged nor proved in the proceeding referred to that the sale were useful and necessary for the plaintiff, at that time a minor; that neither her exact age nor that of the petitioner were set forth, nor how the proceeds of the sale were to be invested; that according to the record of the judicial authorization proceeding, the evidence in the aforesaid case was introduced in the absence of the district attorney, the only witness being petitioner himself, the plaintiff's father; that after the evidence was introduced, the court ordered the stenographer to transcribe the stenographic notes and to attach them to the record once they were transcribed; that no evidence was introduced as to the right of *patria potestas* of the plaintiff's father nor was expert or any other testimony adduced on the value of the immovable; that from the record of the case for judicial authorization it appears that the lot produced a monthly rent of $20 for the plaintiff and that it was free from liens; that the sale took place without the order of sale having been, either at that time or thereafter, entered in the Judgment Book; that said order was issued on August 28, 1934 and the order of execution was issued to the marshal on the same day, without the clerk of the court serving notice of the order on the district attorney, the father, or the minor; that it appears from the record that the order issued in the case for

judicial authorization to enforce the order of sale is not captioned in the name of the "United States of America, The President of the United States, SS:"; that it appears from the record that the auction and sale of the lot in question took place without the edicts which announced the sale having been published in the customary places and without the marshal having previously attached or seized said lot; that plaintiff has not received any sum whatever from the price or value paid for the lot; that upon Juan Hernández Matos acquiring it in public auction he was aware of the abovementioned circumstances and that the defendants herein were likewise aware when they acquired it. The complaint ends with the prayer that the sale at public auction in favor of Juan Hernández Matos be declared null and void, and in consequence thereof that his title in the registry of property be cancelled; that the same pronouncement be made as to the sale by Juan Hernández Matos in favor of the defendants and to proceed to the cancellation of the record made in favor of the latter; that the plaintiff be declared the sole owner of said lot, that she be put in possession thereof and that the defendants be adjudged to pay as damages a sum not less than $50 monthly from October 28, 1937 until the possession of the aforesaid immovable is delivered to her, adjudging them also to pay costs and attorney's fees.

The defendants answered objecting to plaintiff's claims and filed a counterclaim praying that, if the complaint were granted, the plaintiff be ordered to return the amount of $5,000 which they alleged was used in its entirety for her benefit and use, with legal interest on said sum from October 28, 1937 until payment thereof, this last pronouncement in case that the defendants were adjudged to pay the rentals of the lot referred to.

The lower court entered judgment on the merits, dismissing the complaint. It based its decision on *Lókpez* v. *Fernández*, 61 P.R.R. 503. The present case involves substan-

tially the same questions raised in *Lókpez* v. *Fernández, supra*, with the exception that in said case this Court held that there was no evidence whatsoever with respect to the value of the lot sold therein, which also belonged to plaintiff herein, while in this case, the lower court ruled that sufficient evidence was introduced to uphold the minimum price fixed to the lot for the purpose of the alienation.

The principal contention of the plaintiff, appellant herein, is that the doctrine established by this Court in *Lókpez* v. *Fernández, supra,* to the effect that in Puerto Rico the law of the domicile and not the national law is determinative of the personal statute, is erroneous, and this being so, appellant's father had not the *patria potestas* over her; and without it, he lacked authority to institute in her name the proceeding for judicial authorization; hence, the district court lacked jurisdiction to entertain the proceeding for judicial authorization and consequently the order for the sale of the lot was null and void.

In this case as well as in *Lókpez* v. *Fernández, supra*, other grounds are ·alleged for the nullity sought and we shall hereinafter discuss them.

## I

We have examined anew the doctrine laid down in *Lókpez* v. *Fernández, supra,* to the effect that in Puerto Rico, upon construing § 9 of the Civil Code in the light of §§ 5 and 5(a) of the Organic Act, the law of the domicile controls the personal statute, and we find no reason whatsoever to depart from that doctrine. It would be futile to repeat here the exhaustive discussion bearing on this point in the above-mentioned case. But we shall add, however, that assuming that the doctrine were not sound, even then the conclusion that would have to be reached as to this particular point, in this as well as in that case, would be the same as that formerly reached, that is, that plaintiff's father had *patria potestas* over his daughter. This is so, because as we

have seen, it appears from the complaint that plaintiff's father, has at all times been a citizen of the Republic of Cuba, whose laws, like ours, confer the *patria potestas* on the father and as a sequel of said *patria potestas*, confers upon him the usufruct and administration of the properties of his minor children. Consequently, if we should apply as the plaintiff pretends, the national law instead of the law of the domicile, the result would be that according to the doctrine invoked by her, the father had *patria potestas* and could seek the sale of the lot referred to. It may be urged that no evidence has been presented to the effect that the Law of Cuba is identical, to ours as to the afore-mentioned point. But such evidence was unnecessary, inasmuch as Cuba and Puerto Rico having been Spanish provinces until 1898, we can take judicial notice of the fact that the laws of Cuba and those of Puerto Rico, up to that time, were the same, and in the absence of proof to the contrary we must presume that they continue being the same. *Arayo v. Currel*, 1 La. 528 (1830).

▮▮ Appellant argues now that since the lower court decided that her father had the *patria potestas* over her when he sought and obtained the authorization to sell the lot, he deprived her of her property without due process of law. Her proposition rests on the fact that in Connecticut where her parents were married and in New York where she was born, the father does not have the usufruct or the administration of the properties of the minor children nor can he, as such father, seek authorization for the sale of said property.

We concede that in New York and in Connecticut the paternal authority does not grant to the father the right of usufruct over the property of his children, nor to procure authorization for the sale of such property. But when he requests, as in this case, judicial authorization to sell real property belonging to his daughter, located in Puerto Rico, the courts of this jurisdiction are bound to apply to that effect the laws of this country. Likewise, if a Puerto Rican

father, who has the *patria potestas*, goes to New York and seeks judicial authorization to sell real property of his minor child, located in that State, he cannot invoke the laws of Puerto Rico for the purpose of obtaining such authorization, but he must comply with the laws in force in New York. In so acting, the courts of said State would not be depriving the minor of his property without due process of law. What they would do was not to give extraterritorial force to the laws of Puerto Rico and dispose of the real property located in that State, pursuant to the provisions of its own laws. *Babilonia* v. *Registrar*, 62 P.R.R. 661; *Polydore* v. *Prince*, 19 Fed. Cas. 950 (D.C. Me. 1837) and *Woodworth* v. *Spring*, 86 Mass. 321 (1862).

## II

The judicial authorization case reviewed in *Lók-pez* v. *Fernández*, *supra*, was submitted on the exhibits attached to the petition for judicial authorization to which the case at bar refers. Probably by an inadvertence, no evidence was presented as to the value of the lot in the former case and as to the necessity and utility of the sale thereof. The absence of such evidence moved this Court, in *Lókpez* v. *Fernández*, *supra*, to reverse the judgment and declare null and void the order decreeing the judicial sale. But in the judicial authorization proceeding in the case at bar, there was no such lack of evidence. On the contrary, evidence was presented to the effect that the lot was worth $5,000; that it produced a rental of $20 monthly; that the sale was beneficial and useful to the minor because with the proceeds thereof a mortgage for $4,000 with interest at 12 per cent per annum which affected another property of the minor, would be cancelled, and the remainder would be invested at interest.

Since this evidence exists, the validity of the sale cannot be attacked collaterally on this ground. *González* v. *Roig et al.*, 31 P.R.R. 32, and *Lókpez* v. *Fernández*, *supra*, p. 536.

With respect to proof of the *patria potestas* by documentary evidence, it will be sufficient to say that a deed was presented in evidence by virtue of which title to the main property of fifteen thousand square meters was transferred to the minor and from said document it appears that she is a legitimate daughter of Víctor Luis López whose marriage with plaintiff's mother was dissolved by the death of the latter. The right of *patria potestas* stems from the marriage of plaintiff's parents and from her birth; and from the death of plaintiff's mother while in coverture, it appears that up to her death the father had not lost the *patria potestas* because of divorce. Subdivision 31 of § 464[1] of the Code of Civil Procedure is then applicable and in applying it, we must presume that the *patria potestas* was not extinguished when the judicial sale was authorized and took place, since the plaintiff was unmarried and she was only seventeen years old.

Another question raised here and not discussed in *Lókpez* v. *Fernández, supra*, was to the effect that the order decreeing the judicial sale ordered the marshal, and not plaintiff's father, to proceed to sell the lot and it was the marshal who performed the sale. In *Jiménez* v. *The Registrar of Property*, 17 P.R.R. 1065, in an order for judicial authorization to sell the property of minors, the marshal was directed to sell at public auction a house belonging to a minor. The marshal sold the house at public auction and executed the deed of sale. Upon the document being presented in the Registry of Property for admission to record, the Registrar denied the registry because the document had been executed

---

[1] Section 464 of the Code of Civil Procedure subdivision 31, provides:

"Section 464.—All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions and may be controverted by other evidence. The following are of that kind:

"              .           .           .           .           .           .           .           .           .

"31. That a thing once proved to exist continues as long as is usual with things of that nature."

by the marshal and not by the tutor of the minor, said tutor and not the marshal being, in the opinion of the Registrar, the representative of the minor, under the laws in force. In reversing the ruling of the Registrar this Court said that despite the fact that § 82 of the Special Legal Proceedings Act, as amended by § 2 of Act No. 33, approved March 9, 1911, provides that the sale by auction of property belonging to a minor or incapacitated person shall be held in the presence of the marshal of the district and makes no provision whatever in regard to the execution of the deed of sale of the property sold, it is incumbent on the marshal of the district court "who under the express provision of the law has conducted the auction and made the sale," to execute the transfer of title to the property sold.

As we have seen, said statute was construed in the sense that it is the marshal and not the tutor who conducts the auction and makes the sale, despite the fact that the act provides that the auction ought to be conducted before the marshal of the district.

Since the remaining questions now raised were discussed in *Lókpez* v. *Fernández*, *supra*, and having reached a conclusion adverse to appellant's contention, there being no reason why we should depart from the ruling in the previous case, the judgment will be affirmed.