TROUP *against* HAIGHT and others.

Each party has a right to elect his own *examiner;* and the Court will not, on motion of the opposite party, interfere with that right; but a direct examination may be before one examiner, and a cross examination before another.

A party is not entitled to copies of deeds, or other exhibits referred to in the interrogatories of the opposite party, until publication. Exhibits, however, ought to be sufficiently described in the interrogatories, so as to enable the adverse party to know what is intended to be proved, and to put him on all due inquiry.

PETITION of the plaintiff, stating, that *interrogatories,* on the part of the defendants, were served on the solicitor for the plaintiff, on the 19th of *August* last. That they referred to a vast number of exhibits and vouchers, copies of which were not served. That the plaintiff cannot understand the object or meaning of the interrogatories, without seeing the exhibits, or having copies of them, nor can he exhibit correct and pertinent cross interrogatories; and it is necessary, as he is advised by his counsel, that cross interrogatories should be filed. He prayed for an order, that the solicitor of the defendants deliver to the plaintiff's solicitor, correct copies of the exhibits referred to in his interrogatories; and that, in the mean time, the examination of the defendants' witnesses be stayed. A motion was made, at the same time, to enlarge the time of examining *Dugald Cameron,* and *Joseph Fellows,* witnesses on the part of the defendants, to the 1st day of *November* next; and, also, to transfer the examination of these witnesses, from *Ebenezer Griffin,* one of the examiners, to *Bowen Whiting,* another examiner.

In support of the motion, was read the affidavit of *Robert W. Stoddard,* solicitor for the plaintiff, who stated, that on the 19th of *August* last, he received a copy of the

*Sept. 30th, and Oct. 1st.*

1822.

TROUP
v.
HAIGHT.

interrogatories, on the part of the defendants, and that *Dugald Cameron*, of *Bath*, in *Steuben* county, and *Joseph Fellows*, of *Geneva*, in *Ontario* county, would be examined before *Ebenezer Griffin*, on the 31st of *August*, and the 3d of *September*, (which time had been enlarged to the 30th of *September*,) That the interrogatories are very long, and refer to a great variety of matters of account and contract, and other dealings between the parties, principally growing out of the sub-agency of the agents of the *Pulteney* estate, and comprehending a period of time from 1804 to 1814. That the inquiry involves a critical examination of accounts, and a multitude of vouchers and papers, on the records and files of the agency offices, at *Bath*, and *Geneva*. That cross interrogatories are indispensable, and that he cannot safely draw them without first seeing the vouchers and papers, and he required further time. That *Ebenezer Griffin*, an examiner, resides in *Utica*, nearly one hundred miles from *Bath*, where *D. Cameron* is to be examined, and about one hundred miles from *Geneva*, where *J. Fellows* is to be examined. That he, long since, filed interrogatories, on the part of the plaintiff, with *Bowen Whiting*, an examiner, at *Geneva*, and served the same on the plaintiff, and had given the defendants' solicitor time to draw cross interrogatories to *D. C.* and *J. F.*, who are witnesses on the part of the plaintiff; and a list of the witnesses' names, including those two witnesses, was duly served on the solicitor for the defendants. That it will be more convenient for both parties, and cheaper, to examine the witnesses, on both sides, before Mr. *Whiting*, and especially the said *Cameron* and *Fellows*.

In opposition to the motion, was read, 1. The affidavit of *John A. Collier*, solicitor for the defendants, stating, that previous to the last *August* term of the Supreme Court, he wrote to the solicitor for the plaintiff, that it was the wish of the defendants to employ some other examiner than

Mr. *Whiting*, and that as it would produce some confusion to employ two different examiners, on the part of the defendants, the plaintiff might proceed to examine his witnesses, without waiting for cross interrogatories, and that the interrogatories, on the part of the defendants, were prepared, and a copy would be served. That the letter of the plaintiff's solicitor, of the 21st of *August* last, contained the only request for a copy of the exhibits. That there are witnesses for the defendants residing in *Bath*, and in *Tioga* county, and *Ebenezer Griffin*, the examiner, at *Utica*, has agreed to attend at *Bath*, and will pass through *Geneva*. That the interrogatories, direct and cross, and all the exhibits, on the part of the defendants, have been filed with the examiner. That the exhibits are marked, and referred to in the interrogatories, and several witnesses have been already examined by the said examiner, and it will be more convenient for the defendants and deponent to have all the witnesses for the defendants, including *Cameron* and *Fellows*, examined before the said examiner. That the interrogatories, on the part of the defendants, are so drawn as to apprize the opposite party of the nature of their claim against the plaintiff and the *Pulteney* estate, and of the particular mistakes and errors, alleged by the defendants, in the settlements between them and the plaintiff, as chief agent of the *Pulteney* estate, and all of which are particularly set forth in the answer of the defendants. That the facts which the defendants seek to prove, are well understood by the plaintiff, without reference to the exhibits, which go, more or less, to establish the facts relied on in the answer.

*J. V. Henry*, for the motion. He cited *Gilbert's F. R.* 141. *Dickens*, 493. *Twenty-second rule of this Court.*

*J. A. Collier*, contra, consented to the enlargement of the time, for the examination of *Cameron* and *Fellows*, to the first day of *November*. In opposition to the motion

1822.

TROUP
v.
HAIGHT.

for a copy of the exhibits, he cited 2 *P. Wms.* 409.   *New-land's Pr.* 84, 85.   *Com. Dig.* tit. *Chancery,* Q.   7 *Ves.* 411.   2 *Madd. Tr.* 300.   *Str.* 764.   2 *Har. Pr.* 92.   As to a change of the examiner, he cited 17 *Ves.* 354.   2 *Madd. Tr.*219.   3 *Atk.*593.   *Com. Dig.* tit. *Chancery,*(P.)7.

THE CHANCELLOR.   The counsel for the defendants consents to enlarge the time for examining the witnesses, *Cameron* and *Fellows,* according to the plaintiff's motion ; and the first question is, whether the examination of those witnesses shall be transferred from one examiner to another ; from Mr. *Griffin,* at *Utica,* to Mr. *Whiting,* at *Geneva.*   The plaintiff puts it upon the ground of being more convenient and cheaper, and that his interrogatories are filed with Mr. *Whiting.*   On the other hand, the defendants have selected Mr. *Griffin* for their examiner, and filed the interrogatories and exhibits on their part with Mr. *G.,* and they say it will be more convenient for them to examine all their witnesses, including *C.* and *F.,* before the examiner they have employed.   Mr. *G.* has agreed to attend at *Bath,* and will pass through *Geneva,* and therefore the expense and convenience will be nearly the same in taking the examination of the witnesses, *C.* and *F.,* by Mr. *Griffin,* as by Mr. *Whiting.*

I do not perceive any sufficient ground for interfering with the right of each party to elect his own examiner.   In *Turner* v. *Burleigh,* (17 *Ves.* 354.) Lord *Eldon* gave the defendant his option, either that the examiner for the plaintiff, in whose hands the deeds were placed, should cross-examine, or that they should be delivered over to the other examiner for that purpose.   In that case it was allowed, that the examination might be by one examiner, and the cross-examination by another, touching the execution of deeds.   The statute of 50 *G.* III. (referred to in that case) which gave to the Chancellor the power of increasing the number of examiners, provided that the witnesses, on

different sides *of the same cause*, should always (if the same be practicable) be examined by different examiners.

In the present case, the defendants intend to examine *C.* and *F.*, as principal witnesses for them, and they prefer the examiner they have elected, and they exercise a right when they make the selection. It would seem to be unreasonable that the plaintiff could require the defendants to examine those witnesses before the examiner that the plaintiff had elected. If a mere cross-examination was intended on the part of the defendants, we have seen that it has been allowed to be taken before a different examiner. But the examina-tions of *C.* and *F.*, are intended as principal examinations on the part of the defendants, and it would have the ap-pearance of partiality to require the defendants to go before the examiner selected by their adversary to examine them. I have no hesitation, therefore, in denying this part of the motion.

The next point is, whether the plaintiff be entitled to a copy or inspection of the exhibits referred to in the inter-rogatories exhibited on the part of the defendants. He says, it is necessary he should have copies of them, in order to exhibit correct and pertinent cross-interrogatories. On the other hand, it is stated, that the exhibits are marked and referred to in the interrogatories of the defendants, which are so drawn as to apprize the plaintiff of the nature of their claim, and of the mistakes and errors alleged by the defendants in the settlement of the accounts, and that the exhibits go more or less to establish the facts relied on in the answer.

Upon an examination of the cases, I am led to believe, that such an order as the one prayed for, would be with-out precedent, and contrary to the established course and practice of the Court.

In *Davers* v. *Davers*, (2 *P. Wms.* 410.) the plaintiff had proved a certain deed, and the defendant moved and ob-tained from the Master of the Rolls an order for leave to

1822.

TROUP
v.
HAIGHT.

inspect the deed, because the deposition of the witness re-ferring to the deed made the same part of the deposition. It was afterwards moved before Lord Chancellor *King*, to discharge the order, because the other side had no right to see the evidence of the title before the hearing, and it was asserted that no such order was ever made in a like case, and if that motion was granted, similar ones would be made every day, since it would be every one's curiosity to try to pick holes in the deeds, by which he was disinherited. The Lord Chancellor concurred in the objection, and dis-charged the order. The same practice was declared in *Hodson* v. *Earl of Warrington*, (3 *P. Wms.* 34.) The defendant had examined a witness to prove a deed, and the question was, whether the plaintiff could compel the defendant to produce the deed, as the witness had referred to it in his deposition. The Lord Chancellor held it to be the course of the Court, that it remained in the election of the defendant whether he would produce and use the deed or not, and refused the order.

These two cases related to an effort of the adverse party to inspect, before the hearing, a deed which had been ac-tually proved as an exhibit. In the more modern case of *Wiley* v. *Pistor*, (7 *Ves.* 411.) a motion was made, that letters referred to by the depositions on the part of the plaintiff, as exhibits, might be delivered to the defendant's clerk to be inspected. It was said, in opposition to the motion, that it was contrary to the course of the Court, the constant rule being, that one party cannot see the ex-hibits of the other ; and the case of *Hodson* v. *Earl of War-rington* was referred to. On the other side, the practice was admitted to be as stated, where the party refers to *deeds* as exhibits, and the reason was, that by inspection you might invalidate the deed ; but it was supposed, that *letters* were mere matter of evidence, and an exception to the rule. The Master of the Rolls consulted the Register, who did not recollect any such order, and refused the mo-

tion, but allowed it to be made before the Lord Chancellor. It was made accordingly, and argued, and Lord *Eldon* said, he never heard of such a motion. You must, says he, describe the exhibit to be proved *viva voce*, but he did not remember any motion for the inspection of such an exhibit, and the motion was denied with costs.

In the case of *Ogle* v. *Earl Gower*, (*January*, 1783, 2 *Fowler's Ex. Pr.* 47.) the Solicitor General, for the plaintiff, moved, that the defendant produce, for inspection, exhibits *A.* and *B.* already proved, being two books, and publication had already passed. It was objected to, as being contrary to all the rules of practice to call for an inspection of exhibits proved, out of the hands of a party who had so proved them, previous to the hearing, and the motion was denied.

Here is a settled and uniform practice, for above a century, without one solitary exception. An exhibit, be it a deed or letter, is not to be inspected by the opposite party before publication. The rule is founded on the same principle of policy as that by which the testimony at large is kept concealed until publication is duly declared. The exhibit must be sufficiently referred to in the interrogatories to enable the witness to prove it, and that is all that can be required. There is no reason why the opposite party should previously inspect the exhibits, more than the depositions. In the one case it would enable him to hunt after testimony to prop up the weak sides of his cause, which would produce an excitement of a most dangerous tendency; and in the other case, it would enable him to try to " pick holes" in the documentary evidence of his adversary, and which evidence, as we have seen, the party may finally produce or withhold, at his election. When an exhibit is proved at the hearing, *viva voce*, a copy of it is not previously required. It is only to be particularly named, or sufficiently described, in the order or notice preceding the *viva voce* examination, so as to enable the other party

to know what is to be proved. (*Gilbert's F. R.* 141, 142. 1 *Harr. Ch. Pr.* 596. 2 *Johns. Ch. Rep.* 484.) The petition of the plaintiff, and the affidavit of his solicitor, do not complain of any particular and unusual deficiency in the reference to the exhibits made in the interrogatories on the part of the defendant. It is to be presumed they are designated in the interrogatories, according to the usual practice, and that is sufficient for the purpose of putting the plaintiff upon all due inquiry. The plaintiff insists on seeing the exhibits, or having copies of them, and that too without laying a foundation for such an indulgence, by any special cause of weight in itself, and peculiar to this case. If the motion was to be granted in this case, it must be granted in all others ; and it would work an entire revolution in the practice of the Court, on the important point of taking testimony.

I shall deny, also, this branch of the motion ; and, according to the decision in the case of a similar motion before Lord *Eldon,* the motion, in both branches of it, is denied, with costs.

Order accordingly.