## Case No. 16,852.

### VAN HOOK v. PENDLETON et al.

[2 Blatchf. 85;[1] 1 Fish. Pat. Rep. 205.]

Circuit Court, S. D. New York.    April 4, 1848.

PRACTICE IN EQUITY—EXAMINATION OF WITNESSES — EXAMINERS—ORAL TESTIMONY — WAIVER—STAY OF PROCEEDINGS—DISCRETION OF COURT—DEPOSITIONS.

1. The principles which govern the practice of the United States courts in equity, considered.

2. The practice as to examining witnesses in suits in equity, considered.

[Cited in U. S. v. Tilden, Case No. 16,520.]

3. The circuit courts of the United States have power to appoint examiners in suits in equity.

4. It is a matter of discretion whether such examiners shall be standing examiners, or be designated as the occasion arises for their services in any cause.

5. Where the plaintiff in a suit in equity proceeded, after the cause was at issue, to take proofs before one of the standing examiners of the court. without his having been specially appointed as examiner or commissioner in the suit, *held*, that the examiner was competent to take the evidence.

6. An oral examination before an examiner, without any agreement between the parties to waive written interrogatories, is irregular.

7. Such agreement ought to be in writing.

8. But, where a party has due notice that such an oral examination is to be taken, or has been taken. and acquiesces in it. he waives his right to require written interrogatories.

9. Where, more than ten months after such an oral examination, and nearly five months after publication, the defendant, who had due notice of the time and place of the examination, moved to set the proofs aside because they were not taken on written interrogatories, *held*, that he was guilty of laches. and that it was too late for him to raise the objection.

10. Under rule 78 of the rules in equity of 1842, it is a matter of discretion with the court whether it will or will not stay the proceedings in a cause to allow a party to cross-examine or take a new deposition of a witness already examined by deposition for the opposite party under section 30 of the act of September 24th, 1789 (1 Stat 88).

[Cited in Steam Stone-Cutter Co. v. Jones, 13 Fed. 581.]

11. The practice in taking depositions under that act, considered.

This was a suit in equity for an account and an injunction for the infringement of

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

letters patent. After the cause was at issue, the plaintiff [William Van Hook] proceeded to take proofs before one of the standing examiners of the court, without his having been specially appointed as examiner in the cause, or as commissioner therein; and the testimony was taken before him upon oral examination and not by written interrogatories. The defendants [John Pendleton and Jonathan Leach] had written notice, previous to the examination, of its time and place, and of the names of the witnesses to be examined. There was no written stipulation between the parties that the testimony should be taken on oral examination. The defendants now moved to set aside the proofs for irregularity. The testimony was taken more than ten months previous to the motion, and the depositions were filed in the clerk's office nearly five months before the motion. The plaintiff also took depositions, under the act of September 24th, 1789 (1 Stat. 88, § 30), of witnesses residing more than one hundred miles from the place of holding the court. Such depositions were taken in different states, and at places remote from each other, and more than one hundred miles from the defendants. Prior to taking them, the plaintiff gave notice to the defendants of the names and places of residence of the witnesses intended to be examined in that way. and also notified them that, if they would designate agents at those places on whom fuller notices could be served, the particular times and places of the several examinations should be communicated to them, as soon as the officers who were to take the depositions should fix such times and places. The defendants refused to designate any agents, and declined taking any part in the proceedings. The plaintiff took the depositions without serving any further notice on the defendants, and without their being present. The defendants now moved for leave to cross-examine the witnesses whose depositions had been so taken, and that the hearing be stayed for that purpose.

[For prior proceedings, see Case No. 16,-851.]

Seth P. Staples and George C. Goddard, for plaintiff.

Edwin W. Stoughton, for defendants.

BETTS, District Judge. (1.) Under the first motion now made, it is insisted that the rules in equity adopted by the supreme court in 1842.—1 How. [42 U. S.],—regulate the entire subject of taking testimony in suits in equity, and exclude all modes of taking proof other than such as are prescribed by those rules; that they authorize proofs to be taken by an examiner. only when he is specifically appointed in the cause; and that the parties must proceed by written interrogatories, unless they mutually consent to an oral examination.

It will tend to a clearer view of the subject. to recapitulate briefly the principles govern-

ing the practice of the United States courts in equity. The 2d section of the act of September 29th. 1789 (1 Stat. 93), declared, that the forms and "modes of proceedings" in causes of equity jurisdiction should be according to the course of the civil law. "Modes of proceeding," or "processes," comprehend the entire practice applicable to the subject. Wayman v. Southard, 10 Wheat. [23 U. S.] 1; Bank of U. S. v. Halstead, Id. 51. The 2d section of the act of May 8th, 1792 (1 Stat. 276), limited the terms of the direction in the act of 1789, in respect to proceedings in equity, by declaring that they should be conformable "to the principles, rules and usages which belong to courts of equity, as contradistinguished from courts of common law." This act has always been understood to adopt the principles, rules and usages of the court of chancery in England, subject to alterations by the United States courts. Manro v. Almeida, 10 Wheat. [23 U. S.] 473; Hinde v. Vattier, 5 Pet. [30 U. S.] 398; Rule 7 of Supreme Court, Aug., 1791; Rule 33 in Equity, March, 1822; Rule 90 in Equity, March, 1842. The terms of the rule last cited are: "In all cases where the rules prescribed by this court, or by the circuit court, do not apply, the practice of the circuit court shall be regulated by the present practice of the high court of chancery in England," &c. It is obvious, therefore, that the code of rules adopted by the supreme court was not intended to exclude, by implication, other rules and usages of the circuit courts, but that the operation and effect of that code are limited to the specific regulations which it makes.

Three points of inquiry, therefore, arise: 1. What were the usage and practice of this court in taking proofs in causes in equity, when the rules in equity of March, 1842, were promulgated? 2. What was then the practice in the English chancery? 3. What express regulation is made on the subject by those rules?

The first published rules of this court were promulgated October 27th, 1828. Rule 60 of those rules appointed a master and examiner in chancery in causes depending on the equity side of the court, but no other regulation in respect to chancery practice was adopted. Accordingly, the course of procedure in equity suits was governed by the rules of the supreme court and the English practice. Rule 73, adopted on the 15th of January, 1833, provided, that "if a general commission is not issued pursuant to the 25th rule" in equity of the supreme court" (of 1822), "within ten days after replication filed, either party may give notice of the examination of witnesses before the standing examiner of this court; and three months from the time of the replication shall be allowed the parties for taking their depositions before the examiner." This rule was incorporated in the revision of 1838 as rule 108. The rules in equity of 1822 of the supreme court upon this head were rules 25, 26 and 28, and they rec-

ognize, rather than adopt or direct, three methods of taking proofs: 1. According to the acts of congress. 2. Under a commission. 3. Before a master or examiner appointed in the cause, where the witnesses live within the district. And it may be remarked, in this connection, that the supreme court, by rules 67, 68 and 78 of the rules in equity of 1842 re-adopt in effect the provisions of those prior rules 25, 26 and 28—clearly so, so far as the present point of inquiry in regard to the rule of the circuit court for taking proofs is concerned.

It is manifest that the supreme court did not consider it necessary, in the first instance, to provide or create any of the officers referred to. They instituted neither commissioners, masters nor examiners. Those officers were referred to as adjuncts to the court, and incidental to it in the exercise of its powers, whenever its business should demand their agency.

The mode of proceeding in England was familiar to the profession in this country, and had been of immemorial usage in the English chancery. After issue joined, either party, on filing interrogatories with the clerk in court, could sue out a commission for the examination of witnesses out of London. The commissioners were designated on the nomination of both parties. 1 Har. Prac. 140; 2 Mad. Ch. Prac. 405. The same practice in substance was in force when the supreme court promulgated the rules of 1842 (2 Daniell, Ch. Prac. 1070), and it is manifest that the commission authorized by those rules is the same in general purpose and effect with that granted by the English chancery, except that, upon their face, the rules might import an obligation on parties to take all their proofs under such a commission or under the act of congress. The 25th rule in equity of 1822 restricted the taking of testimony by commission to witnesses residing out of the district, and left it optional with either party to summon his witnesses residing within the district before "the commissioners appointed to take testimony, or before a master or examiner appointed in any cause," &c. Rule 78 in equity, of 1842, is in nearly the same terms.

In this case, the plaintiff examined his witnesses before a standing examiner of the court. Two exceptions are taken to the regularity of this method of proceeding: 1. Because no appointment of an examiner in the cause was made by the court. 2. Because the examination was taken orally and not upon written interrogatories.

1. An examiner is not, in the course of chancery practice, created or appointed at the instance of suitors, any more than a master, register or clerk. He is an official attached to the court, permanently in commission, to execute the functions appropriate to his office. He was originally regarded in England as a clerk of the master of the rolls, delegated by him to take examinations formerly had before

him personally. 2 Daniell, Ch. Prac. 1069. Yet there, as in the United States, he is an officer of the court, created for the purpose of taking proofs, however his appointment may be made. 1 Barb. Ch. Prac. 277. No statutory provision seems to have been made in this state for the appointment of examiners, prior to the constitution of 1821. Const. 1821, art. 4, § 12. Under the constitution of 1777 they were, in practice, commissioned by the governor and council of appointment. Const. 1777, art. 23. The court of chancery had power, under that constitution, to appoint its register and clerks only (article 27), but the legislature recognized examiners as permanent officers of the court, and conferred on them power to administer oaths to witnesses and to take affidavits to be read in court. 1 Kent & R. Laws, 444, § 16; 1 Rev. Laws. p. 491, § 13. However the appointment of examiners may have been first made in England, from the time they became recognized standing officers of the court of chancery, acting in place of the court in taking testimony, they received their appointment from the court. Turner v. Burleigh, 17 Ves. 354. Under the process act of May 8th, 1792 (1 Stat. 275), and the act of August 23d, 1842 (5 Stat. 516), the same power of appointment devolves upon the United States courts, in equity, to be exercised by the circuit courts, pursuant, however, to the directions of the supreme court when given. Under this general authority commissioners are appointed to take testimony. They are named in each cause separately, because it is important to designate them with reference to the residence of witnesses, very generally out of the district; and that this is the reason for authorizing a commission at all, would seem probable from the rule dispensing with it at the election of parties where the witnesses reside in the district. The same power which enables the court to name commissioners, suffices for the appointment of masters and examiners, they being all officers auxiliary to the court in aid of the exercise of its jurisdiction. In regard to masters and examiners no reason exists for limiting their appointment to particular causes, and there is a manifest convenience and propriety in confiding trusts which demand much legal knowledge and experience in chancery proceedings, to standing officers, whose capacity and places of business may be known to the community.

The rules in equity of 1822 left these appointments wholly to the circuit courts, without direction or suggestion on the part of the supreme court. In the rules in equity of 1842, it was thought proper to sanction (rule 82) the appointment by the circuit courts of standing masters, and of masters pro hac vice. But there is no trace in this district of any previous limited appointment of masters. They were undoubtedly made permanent officers, in consonance with the usage of the English chancery; and it is difficult to perceive any reason supporting their appointment in either way, that does not uphold it in both. As the circuit courts could, no doubt, without the aid of rule 82, have appointed masters pro hac vice, at their discretion, when the course of business demanded it, so, with the same object in view, they could have designated standing masters. The power had been so interpreted in this district. Masters have been standing officers of this court since 1822, and examiners since 1828. Previous to the adoption of the rules of 1828, the usage of the circuit court within this district seems to have been, to refer subjects appropriate to a master's office to a standing master of the state chancery, which in effect was equivalent to appointing him a master pro hac vice. Congress, by conforming the powers of the United States' courts in equity to those of the high court of chancery in England, must be supposed to have contemplated the naming of agents to carry out those powers, as well in matters incidental to the business of the courts, as in the course of proceedings in suits.

It is argued that the authority given by rule 78 of 1842, in equity, to take testimony before an examiner, is expressly limited to one appointed in the particular suit. The language of the rule, however, would be satisfied, by designating in a common order, or by mere notification, the officer with whom the interrogatories were to be filed or the examination was to be had. That would be in effect appointing him examiner in the cause, although he should not be commissioned anew. And the course of practice is tantamount to what is called appointing a master or examiner in the cause, for both parties are not required to take their testimony before the same examiner, each being at liberty to designate his own examiner, both for the direct and the cross examination of witnesses. Turner v. Burleigh, 17 Ves. 354; Troup v. Haight, 6 Johns. Ch. 335.

We have no doubt of the authority of this court, under the acts of congress and the rules of the supreme court, to appoint examiners, and it then becomes wholly a matter of discretion, whether they shall be appointed standing examiners or be named as the occasion arises for their services in any cause. We therefore hold, that the examiner employed in this case was competent to take the proofs.

2. The point touching the irregularity of the proceedings in the examiner's office might probably have been conclusive against the plaintiff, if it had been raised in due time. The examination of witnesses was taken on oral interrogatories, conformably to the practice of the state court of chancery. 1 Hoff. Ch. Prac. 462. The English method is different, and no express rule of this court has authorized a dispensation with written interrogatories, in an examination before a commissioner or examiner. The 67th rule in equity of the supreme court, of 1842, provides, that "if the parties shall so agree, the testi-

mony may be taken upon oral interrogatories by the parties or their agents, without filing any written interrogatories." There ·is great practical convenience in that mode of examination, and, as it is the established practice in. the state chancery to take examinations viva voce (2 Rev. St. p. 180, § 83; Ch. Rule 85), the courts of the United States would be disposed to apply the most liberal intendments to uphold examinations of witnesses so taken, without evidence of any written stipulation or consent between the parties to that end. If it be out of the usual course to give effect to a mere verbal agreement between parties or their attorneys, out of court, affecting the cause, yet a waiver of objections to mere matter of form may be implied, and the court may safely hold, that a party who had notice that an examination was to be taken, or had been taken, orally, and acquiesced in it, should be considered to have waived his legal right to require written interrogatories to be filed. The testimony in this case was taken nearly a year ago, on written notice to the defendants of the time and place of taking, and of the names of the witnesses to be examined. Publication was made nearly five months ago.

We do not put our decision upon the ground that the defendants were bound to move for the suppression of the proofs before the depositions were placed on file; although, good faith and liberal practice should have induced them to apprize the plaintiff that they intended to treat the proceedings as irregular. But we hold the defendants to have been guilty of laches in not moving the court, or a judge out of court, to suppress the proofs, immediately on their being filed or published. By rule 1 of the rules in equity of 1842, the circuit court is always open for motions of that character, and probably, under rule 3, and other rules, a judge at chambers can hear such a motion at any time. It is an elementary doctrine in the practice of all courts, that parties shall take advantage of irregularities at the first opportunity after acquiring knowledge of them, or be deemed to have waived all objections to them. Grah. Prac. bk. 3, c. 21; Hinde v. Tubbs, 10 Johns. 486; Rowan v. Lytle, 4 Cow. 91; Brasher's Ex'rs v. Van Cortlandt, 2 Johns. Ch. 247; Skinner v. Dayton, 5 Johns. Ch. 191. Here, there has been a delay since actual publication of nearly five months, a time abundantly sufficient for the plaintiff to have re-examined his witnesses in season for a hearing at this term, if his former proceedings had been held irregular; and a delay of more than ten months since the examination was had. We think the defendants are precluded from now. raising this objection.

(2.) The motion by the defendants for leave to cross-examine the witnesses whose depositions were taken under the act of congress, and that the hearing be stayed for that purpose, must also be denied. The defendants had all the notice of the time and place of taking the depositions that was necessary or reasonable. They contend, however, that rule 78 of the rules in equity of 1842 entitled them to refuse, as they did, to designate agents, or to take any part with the plaintiff in the proceedings; and that, as the plaintiff took his depositions without serving on them notice of the time and place of taking, they can now have the cause stayed to enable them to cross-examine the witnesses. But we think rule 78 does not justify the interpretation insisted on, ·and that, as the defendants intentionally took their stand upon a legal point, they must bear the consequences of its determination against them. The rule in question allows a party the opportunity of an after cross-examination, or of taking a new deposition of the witness, only where "a court or judge shall, under all the circumstances, deem it reasonable." No facts are laid before us showing the necessity or propriety of a further examination of the witnesses. It is not stated that they gave testimony adverse to the defendants, or that there are facts within their knowledge, not stated, which might be important in the cause. We are not furnished with any circumstances to guide our discretion in this respect. On both grounds, the motion must be denied. ·

We do not intend to intimate that there is any objection to the defendants' proceeding, at their own expense and risk, to take the evidence of the witnesses already examined. or of others. ·The point is not so presented that we are called upon to decide whether they can now bring in testimony on their part.

[For other cases involving this patent, see note to Gibson v. Van Dressar, Case No. 5,402.]