### IN THE

# SUPREME JUDICIAL COURT

## FOR THE COUNTY OF BERKSHIRE, SEPTEMBER TERM 1862, AT LENOX.

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. CHARLES A. DEWEY,
HON. THERON METCALF,
HON. PLINY MERRICK,       } JUSTICES.
HON. REUBEN A. CHAPMAN,

## JAMES H. WOODWORTH vs. AZUBAH SPRING.

One who has been appointed under the laws of another state to be the guardian of a child whose legal domicil is in that state, has no absolute right to the custody of the person of his ward in this commonwealth; but his office of guardian will be considered by the court as an important element in determining to whom the custody of the child shall be granted.

The appointment in this commonwealth of a guardian over a child whose legal domicil is in another state, and who has a guardian appointed under the laws of that state, does not deprive this court of the power, in its discretion, to decree the custody of the child to the foreign guardian.

HABEAS CORPUS. The petitioner claimed the custody of Edward Spring, a minor of the age of eleven years, whose father and mother were residents of Chicago, Illinois, until their death, after which the petitioner, who is not a relative of the child, was appointed as his guardian, under the laws of that state. The

respondent, who is the child's aunt, brought him to this common-
wealth in 1856, with the consent of the petitioner; and, in
June 1858, she was appointed as his guardian, without the
knowledge of the petitioner, by the judge of probate of Berk-
shire county, where she resided.    The present writ was brought
by the petitioner for the purpose of asserting his right to the
custody of the person of the child.

At the hearing before the chief justice, the respondent con-
tended that the guardianship in Illinois could have no such
effect or operation in this commonwealth as to entitle the peti-
tioner to claim, on the facts stated, the right to the custody of
the person of the child; and that if under other circumstances
the petitioner could have such right, it was defeated by the ap-
pointment of the respondent as guardian in this commonwealth,
by virtue of which she had the right to the custody of the per-
son of the child; and these questions were reserved for the de-
termination of the whole court.

The case was argued in September 1861.

*M. Wilcox,* for the petitioner.

*J. Branning,* for the respondent.

BIGELOW, C. J.    The child, whose custody is in controversy
in this case, is legally domiciled in the State of Illinois.    That
was his domicil of origin; and as he has had, hitherto, no legal
capacity to acquire a new one, and as the guardian appointed
in the place of his origin has never intended to change the dom-
cil of his ward, that of his birth still continues.    Story Confl.
Laws, § 46.    In determining the question of his legal custody
in this commonwealth, he is therefore to be regarded as a for-
eign child who is lawfully within the jurisdiction of this state,
having been brought within its limits, not forcibly or clandes-
tinely, but with his own consent and with that of the petitioner,
his duly appointed guardian under the laws of Illinois, who had
the lawful custody of his person in that state.    So much seems
to be clear; and if the right to the possession and control of the
person of the child depended on his domicil, the right of the
petitioner to claim the custody of his person would be indisput-
able.    But we are unable to see that the facts that the child was

Woodworth *v.* Spring.

born in another state, and that he has never by an act or election of his own or of his guardian obtained a new home here, have a decisive bearing on the question at issue in the present case. He is now lawfully within the territory and under the jurisdiction of this commonwealth, and has a right to claim the protection and security which our laws afford to all persons coming within its limits, irrespective of their origin or of the place where they may be legally domiciled. Every sovereignty exercises the right of determining the *status* or condition of persons found within its jurisdiction. The laws of a foreign state cannot be permitted to intervene to affect the personal rights or privileges even of their own citizens, while they are residing on the territory and within the jurisdiction of an independent government. Effect may be given by way of comity to such laws by the judicial tribunals of other states and countries; but, *ex proprio vigore*, they cannot have any extra-territorial force or operation. The question whether a person within the jurisdiction of a state can be removed therefrom depends, not on the laws of the place whence he came or in which he may have his legal domicil, but on his rights and obligations as they are fixed and determined by the laws of the state or country in which he is found. The master, who, in his own country, has property in the person of a slave, and unlimited control over his services, cannot, in the absence of a constitutional provision having the force of paramount law, enforce his rights in a state where slavery is not recognized as a lawful domestic relation. The comity of a state will give no effect to foreign laws which are inconsistent with or repugnant to its own policy, or prejudicial to the rights and interests of those who are within its jurisdiction. Even the parental relation, which is everywhere recognized, will not be deemed to carry with it any authority or control beyond that which is conferred by the laws of the country where it is exerted. The *patria potestas* of a foreign parent over his child is not that which is vested in him by the laws of the place of his domicil, but that which exists by virtue of the parental relation in the country where the father seeks to enforce his authority. These well settled principles are founded on the necessity of securing

and preserving to every state the exclusive sovereignty and juris·diction within its own territory, and avoiding the confusion and conflict of rights and remedies which would ensue from attempting to give extra-territorial effect to the varying laws of different countries. *Statuta suo cluduntur territorio, nec ultra territorium disponunt.* Every nation has an exclusive right to regulate persons and property within its jurisdiction according to its own laws, and the principles of public policy on which its own government is founded. It results from these principles, that persons exercising offices and trusts with which they are clothed by virtue of the laws of a particular state or country cannot undertake to transfer their power or capacity to act, so as to control persons or property situated beyond the limits of the jurisdiction of the government or sovereignty from which their authority is derived. An administrator appointed under the laws of a foreign state cannot act as such in this common-wealth. Nor, for like reasons, can a guardian appointed by vir-tue of the statutes of another state exercise any authority here over the person or property of his ward. His rights and powers are strictly local, and circumscribed by the jurisdiction of the government which clothed him with the office. Story Confl. Laws, § 499. *Morrell* v. *Dickey,* 1 Johns. Ch. 153. *Kraft* v. *Wickey,* 4 Gill & Johns. 322. *Johnstone* v. *Beattie,* 10 Cl. & Fin. 42, 113, 145. So far, therefore, as the claim of the pe-titioner to the custody of the child in the present case rests on a supposed rightful authority to control his person in this commonwealth, by virtue of his appointment as guardian in the State of Illinois, it is not supported either on principle or au-thority. He cannot assert his tutorial power, *de jure,* in our courts or within our territory.

But it by no means follows that his claim to the care of the child and the control of his person, and to the privilege of re-moving him from this commonwealth, is to be absolutely denied. On the contrary, it is the duty of the courts of this state, in the exercise of that comity which recognizes the laws of other states when they are consistent with and in harmony with our own, to consider the *status* of guardian which the petitioner holds under

the laws of another state as an important element in determining with whom the custody of the child is to continue. It would not do to say that a foreign guardian has no claim to the care or control of the person of his ward in this commonwealth. If such were the rule, a child domiciled out of the state, who was sent hither for purposes of education, or came within the state by stealth, or was brought here by force or fraud, might be emancipated from the control of his rightful guardian, duly appointed in the place of his domicil, and thus escape or be taken out of all legitimate care and custody. But in such cases the foreign guardian would not be regarded here as a stranger or intruder. His appointment in another state as guardian of an infant, with powers and duties similar to those which are by our laws vested in guardians over the persons of their wards, would entitle him to ask that the comity of friendly states having similar laws and usages should be so far recognized and exerted as to surrender to him the infant, so that he might be again restored to his full rights and powers over him, by removing him to the place of his domicil. And if it should appear that such surrender and restoration would not debar the infant from any personal rights or privileges to which he might be entitled under our laws, and would be conducive to his welfare and promote his interests, it would be the duty of the court to award to the foreign guardian the custody of the person. This is the doctrine substantially stated by Lord Langdale in *Johnstone* v. *Beattie, ubi supra,* and confirmed in a subsequent judgment in the case of *Stuart* v. *Moore,* in the House of Lords, as reported in 4 Law Times, (N. S.) 382.

Nor can we see that the appointment of a guardian over the minor by the probate court in this commonwealth operates to bar any decree by this court in favor of the foreign guardian, awarding to him the custody of his ward. Such an appointment might be expedient and proper for the purpose of clothing some one in this commonwealth with authority over the person of an infant for his protection and security against any unauthorized interference or control. But it certainly would not conclusively settle his permanent *status* or condition, so long as he

remained an infant, or prevent his being removed from the Commonwealth by the guardian appointed in the place of his domicil, if the interests and welfare of the ward rendered such removal expedient or necessary. No doubt, so long as the child continues within this jurisdiction, the guardian appointed in the courts of this state would have the exclusive right to the cus tody of his person. But the decree of the probate court does not deprive this court of the power to adjudicate and determine the question of the proper custody of the child as between a domestic guardian and one appointed in the place of the domicil of the infant. The jurisdiction of this court to decide, on *habeas corpus* or other proper process, concerning the care and custody of infants, is paramount, and cannot be taken away by any decree of an inferior tribunal. *Commonwealth* v. *Briggs*, 16 Pick. 203. The result is, that neither of the parties to the present proceeding can assert or maintain an absolute right to the permanent care and custody of the infant who is now before the court. But it is for this court to determine, in the exercise of a sound judicial discretion, having regard to the welfare and permanent good of the child as a predominant consideration, to whose custody he shall be committed. The case must therefore stand for future disposition.