[No. 1543.]

# THE STATE OF NEVADA, EX REL. J. R. SCHULZ AND R. SCHULZ, RELATORS, *v.* EUGENE SWEENEY, JAMES FURLONG AND MARGARET SCHULZ, RESPONDENTS.

SCHOOL DISTRICTS—UNION SCHOOL—PRESUMPTION—RECORDS—EVIDENCE. Under section 30 of the general school law, enacted in 1865, authorizing school trustees of contiguous districts in the same or adjoining counties to establish a union school to be supported out of the funds belonging to the respective districts, and the act of February 24, 1879 (Gen Stats. p. 387), authorizing county commissioners to form union school districts out of parts of two counties under certain conditions, where the inhabitants of two districts in adjoining counties have for nearly twenty years acted as a union district, and carried on a union school supported by the public school funds belonging to the respective districts, it will be presumed to be a union district regularly organized, without proof of its formation by the records of either said trustees or said commissioners.

IDEM—IDEM—IDEM—APPOINTMENT OF TRUSTEES. In the absence of evidence to the contrary, it will be presumed that, upon the formation of a union school district, the trustees were appointed in accordance with the provisions of the act of 1879 (Gen. Stats. p. 387), authorizing the county commissioners to form union school districts out of parts of two counties, and to appoint trustees therefor—two from the county having the largest number of "census children" in its part of the district, and one from the other county.

IDEM—IDEM—SCHOOL CENSUS—PRESUMPTION IN FAVOR OF OFFICIAL ACT. Under the general school law (Gen. Stats. p. 380), requiring the census marshal, when a district lies partly in two counties, to report to each county superintendent the number of children in each county, and that, if at any time the county superintendent has reason to believe that a correct report has not been returned, he may appoint a census marshal, and have the census retaken, the court is bound by the return of the marshal, as it is presumed that the marshal did his official duty correctly, as the statute has provided a remedy for an incorrect census.

SCHOOL CENSUS—OFFICIAL REGISTRATION CONTROLS. The term "census children" in the act of February 24, 1879 (Gen. Stats. p. 387), providing that trustees shall be apportioned according to the number of "census children," means the number of children officially registered.

PROCEEDING in the nature of *quo warranto*, on the relation of J. R. Schulz and R. Schulz, against Eugene Sweeney and James Furlong. Writ allowed.

The facts sufficiently appear in the opinion.

*James R. Judge*, Attorney-General, *E. C. Nagel*, District Attorney, and *D. W. Virgin*, for Relators:

I. Upon the question of the existence of Clear Creek

Union School District, and that the same is composed of contiguous portions of the counties of Ormsby and Douglas, we have the reports of the census marshals for the years 1896, 1897 and 1898, showing that the reports so prepared by them included the children residing as well in that portion of the district lying in Douglas county as in the portion thereof lying in Ormsby county, and that these reports were submitted, approved and endorsed by defendants, and were filed with the county school superintendent of Douglas county, and these reports, as prepared and filed, show the greater number of children of school age in the district as being residents of that portion of the district lying in Douglas county.

II.   We also have the reports of the trustees of said district running back for a period of ten years, including reports by defendants made to the county school superintendent of Douglas county, treating and dealing with the district as a union district.   We further show, by a series of orders (a portion of them signed by defendants) drawn by the trustees on the county superintendent of schools of Douglas county for the salary of the teacher and janitor of said district, and that the salary of the teacher and janitor of the school in said district was paid in alternate months by Douglas and Ormsby counties, clearly indicating that what was formerly school district No. 6 in Douglas county and Clear Creek School District No. 3 in Ormsby county have been recognized and treated for years as a union school district, and that it is authorized as such is shown by the testimony of Charles M. Schulz, who resided in the Ormsby portion thereof for years and acted as one of the trustees and clerk of the school board of said district, who states in his testimony that one Greenlaw, the then superintendent of schools in Ormsby county, in a conversation with him, had promised to have the two districts—No. 6 in Douglas and No. 3 in Ormsby—united, and thereafter notified him that it had been arranged, and ever since it had been conducted as a joint district.

III.   It was shown by the minutes of the board of county commissioners of Douglas county that Clear Creek School District No. 6 was created on January 5, 1874, with well-defined boundaries, and by the minutes of the board of

county commissioners of Ormsby county that Clear Creek School District in Ormsby county was created on February 3, 1879, without defined boundaries and limits, and presumably the limits and boundaries recognized and acquiesced in are correctly shown by the children residing therein as their names are given in the reports of the census marshals.

IV. At the times that district No. 6 in Douglas county and district No. 3 in Ormsby county were created there were, as appears by the testimony, contiguous school districts lying in adjoining counties, and the board of trustees had the power, under the provisions of section 30 of the act of the legislature then in force, providing for the maintenance and supervision of public schools (Stats. 1865 p. 413), to consolidate or unite the two districts, and maintain therein one union school, instead of two separate schools.

V. This portion of the act of 1865 remained in force until March 20, 1891 (Stats. 1891, p. 99), when it was amended so as to be applicable to counties polling not less than twenty-five hundred votes at the last preceding general election. This amendment, standing by itself, would no doubt be construed as prohibiting any union school district in the case at bar, at least, were it not that, on February 24, 1879, an act of the legislature was approved, making provision for the formation of school districts of the parts of two or more counties (Stats. 1879, p. 47), and, while it appears that the union school district formed a school district of school district No. 6 in Douglas county and Clear Creek School District No. 3 in Ormsby county may not have been formed in accordance with the provisions of the last-mentioned act, still they were created when the act of 1865 was in force and effect, recognized and conducted as a union district during a portion of the time that act was in force, and, when that act became inoperative as to the union district, the act of 1879 became applicable, and was so recognized by the trustees and school authorities of the district, as is evidenced by the fact that there is nothing to show that more than three persons have constituted the board of school trustees of said district, and, having recognized and adopted the act of 1879 as applicable to the district so formed of parts of the two counties, it is now too late to seek to avoid the

force of that law, when it clearly appears by the testimony that the majority of the school children do and have resided in that portion of the district situated in Douglas county for more than three years past.

*Torreyson & Summerfield,* for Respondent:

I.   The first question to be determined in this proceeding is:  Can the existence and organization of this union or joint school district be shown by repute, or must it be established by record evidence and in accordance with the school laws of this state?  The evidence shows that this district has been in existence since, at least, the year 1879; that school reports have been made by the trustees to the respective county superintendents of Ormsby and Douglas counties; that orders have been drawn by the trustees upon the county superintendents, respectively, of Ormsby and Douglas counties for the salaries of the janitor and teacher of this school, and that the salary of the teacher and janitor of the school in said district was paid in alternate months by Douglas and Ormsby county; that the residents and taxpayers of these two districts have acquiesced for these years in the formation of this district, and its organization has never been questioned; that school moneys have been apportioned by the county superintendents of each county to the school fund of this district.

II.   At the oral argument of this case, we took the position that a joint school district could only be organized in the manner pointed out by law, and that the organization of the district must be established by record evidence.  We believe the weight of authority to be against this position, and that a school district may be established by reputation, and that this court has so decided.  (*State* v. *C. P. R. R. Co.*, 21 Nev. 75, 78; 21 Am. & Eng. Ency. p. 783, n. 1, 2, and cases cited.)

III.   Admitting now that a union school district has been established by reputation, the next question arises as to the power of the county superintendent of schools to appoint relators as trustees.  It is shown by the testimony that relators were appointed by the county superintendent of Douglas county, and respondents by the county superintendent of

Ormsby county. It is a condition precedent to the power to appoint that an actual vacancy shall have occurred. The power to make a valid appointment does not arise until there is a vacancy in fact. (*State ex rel. Carson* v. *Harrison*, 113 Ind. 438.)

IV. There is no provision in this act as to how trustees shall be elected in a union school district, and the only provision in the act which we can find, and which might be applicable to union school districts, are the general words found in section 2, to wit: " Or when vacancies occur the superintendent of public schools shall fill such vacancies by appointment." If this provision with reference to vacancies was not found in this act, no power would lie in the county superintendent to fill vacancies in a union school district, *under this act,* for no reference whatever is made to union school districts, and so far as union school districts are concerned, if no election were held, the trustees would hold over until their successors were elected and qualified.

V. The testimony shows that no election for trustees was ever held in this union district since its inception. If, as claimed by counsel for relators, the county superintendent of schools of each district has the power to fill vacancies, where no election is held, he would only have the power to fill such vacancy as then existed. If, from time immemorial, and upon this theory, a union school district exists, then Clear Creek District No. 3, under the proofs, has always had two trustees, and Clear Creek District No. 6 in Douglas county has always had one trustee, and the inhabitants of both districts have acquiesced in this apportionment, and the county superintendent of schools, if he had the right to appoint, would only have the right to fill *one* vacancy in district No. 6, and two vacancies in district No. 3.

VI. The act of February 24, 1879 (Gen. Stats. 1348), provides that school districts may be formed of parts of two or more counties by petitioning the county commissioners of each county in which parts of such district may be located. It also provides that " the county commissioners of each county in which parts of such district is located shall appoint three trustees, two from the county having at the time of such

application the largest number of census children in its part! of said district, *their successors to be chosen at the next general election on the same basis."* No election was held under the act of 1897, and the school law provides that it is the duty of the census marshal to take annually, between the 1st and the 31st of May, inclusive, a census of all children, and to report the result of his labors to the county superintendent of schools on or before the 15th of June in each year, and whenever a district is found lying partly in two adjoining counties the census marshal must report to each county superintendent the number of children in each county. (Gen. Stats. 1314, 1315.)

VII. The county superintendent of schools of Douglas county claimed in this proceeding to have had the right to appoint relators, from the fact that the return of the census marshal shows that there were more census children in district No. 6 than in district No. 3. We deny his right to so appoint. We deny that this officer had the right to determine whether there were two vacancies or one. We deny the right that he had the right to create an additional vacancy, and fill it. There is no law providing that county superintendents can change the number of trustees. All he can do, if no election is held, is to fill the vacancy then existing. Why is this not a proper construction of the law? If it is necessary to make a change in the number of trustees the county superintendent should report to the commissioners, after he received the census, in what district the majority of children are. After that there is no necessity of calling an election, but it is the duty of the county commissioners to determine the number of trustees, and if no election is held, to have trustees appointed.

VIII. Conceding, for the sake of argument, that the report of the census marshal for the year 1898 shows that there are more census children in district No. 6 than in district No. 3, to wit, five census children in district No. 6 and four census children in district No. 3, yet we claim we are not bound by the report of the census marshal, nor are we estopped from showing the truth—namely, that the census marshal has overlooked some census children belonging to that district.

By the Court, BONNIFIELD, J.:

This is a proceeding in the nature of a *quo warranto*, brought by the attorney-general, upon complaint of the relators, against the defendants, for unlawfully intruding themselves into, and usurping and exercising, the offices of school trustees of an alleged union school district, alleged to exist and to be formed and composed of contiguous portions of the counties of Ormsby and Douglas, and known in Douglas county as Clear Creek District No. 6, and in said Ormsby county as Clear Creek District No. 3.

The formation and existence of said union district are denied by the answer, and were contested at the trial. No record evidence of the actual formation of said district was introduced, and it appears that none could be found in either the records of the school trustees of the respective districts, or of the boards of county commissioners of either of said counties.

But it appears from the evidence that for and during the period of over nineteen years last past there were and are now numerous persons—heads of families having children of lawful school age—claiming to act and acting as inhabitants of said union school district, and that they have carried on a union school therein during all of said time. It likewise appears that the inhabitants of said district ten years or more ago raised the necessary funds, and built the present school house therein as a union school house for said union district. It also appears that the legal formation and existence of said union district were never questioned prior to the bringing of this proceeding. It appears that Clear Creek District No. 6, in Douglas county, was duly established in 1874, with well-defined boundaries, and that Clear Creek district No. 3, in Ormsby county, was duly formed in February, 1879, embracing certain farms and inhabitants, and that these districts are contiguous. There is oral evidence to the effect that said union district was formed by the county commissioners in April, 1879, composed of said two districts, and there is evidence to the effect that ever since the last-named date the inhabitants of said two districts have acted together as a union district, and maintained a union school therein, out of the public school fund of said districts No. 6 and

No. 3, respectively.   Section 30 of the general school law, enacted in 1865, authorized school trustees to unite two contiguous school districts in the same county, or in adjoining counties, and to establish a union school, to be supported out of the funds belonging to the respective districts.   This section remained applicable to the formation of union districts by the trustees of school districts throughout the several counties of the state until the Statutes of 1891 (p. 99) amended it so as to make it apply only to counties polling not less than 2,500 votes at the last preceding general election.

The act passed February 24, 1879 (Gen. Stats. 387), authorizes the county commissioners to form union school districts out of the parts of two counties under certain conditions, and it provides, in substance, that, when such district shall be established, three trustees shall be appointed therefor; that the county commissioners of the county having at the time of such apportionment the larger number of " census children " in its part of said district shall appoint two trustees, and the county commissioners of the other county shall appoint one trustee, " their successors to be elected at the next general election on the same basis."

The union district in question might have been properly formed by the concurrent action of the trustees of said two school districts, or by like action of the county commissioners of said counties.   In view of the fact that the inhabitants of said two districts have for a long series of years acted as a union district, and carried on a union school therein during said years, supported by the public school funds belonging to the respective districts, they may be regarded upon reason and authority as belonging to a union district, regularly organized, without proof of its formation by the records of either said trustees or said county commissioners.   (21 Am. & Eng. Ency. of Law, 783, and cases there cited; State v. C. P. R. R. Co., 21 Nev. 75; Stewart v. School District, 30 Mich. 69.)

We must presume, in the absence of evidence to the contrary, that the county commissioners of the respective counties appointed trustees upon the formation of said district in accordance with the provisions of said act of February 24, 1879.   It seems that no election for trustees has been held in

either of said two districts since the formation of said union district, in April, 1879.

The said act of February 24, 1879, makes no provision for the appointment of trustees in case no election is had by the voters of the district. In such case the general school law must be looked to for appointing power. It provides that the county superintendents of public schools shall appoint school trustees in all the districts of their respective counties in which the qualified voters fail to elect. Such has been, substantially, the provision of the school law ever since March 5, 1877.

It will be observed that such appointments by said superintendents must be made upon the basis named in said act of February 24, 1879—that is, of the school districts composing said union district, the one having the greater number of " census children," at the time of the appointment of trustees, is entitled to two trustees; the other to one trustee.

The general school law (Gen. Stats. 380) makes it the duty of the census marshal to take annually, in the month of May, a census of all the children between certain ages who are residents of his district on the first day of said month, and, when a district is found lying partly in two adjoining counties, it requires him to report under oath to each county superintendent the number of children in each county. It is provided that, if at any time the county superintendent has reason to believe that a correct report has not been returned, he may appoint a census marshal, and have the census retaken. The presumption is that the marshal did his official duty, and that his report is correct. If the return of the marshal did not correctly report the number of children in either part of said district, the statute provides a remedy and mode of securing a correct census. We are of opinion that the court, and all concerned in this case, are bound by said return of the marshal.

We are of opinion that the term " census children," found in said act of 1879, means the number of children officially registered. One of the definitions given by Webster of "census" is: "An official registration of the number of the people."

We conclude from the facts in this case, and the statutes

applicable thereto, that the relators are duly appointed trustees of said union school district, by their appointments made in June and July, 1898, and that the defendants are not duly appointed trustees of said district, by their appointments on the 8th of July, 1898, or otherwise. The county superintendent of Ormsby county was authorized to appoint but one trustee for said district, but he appointed two, the defendants herein, on the same day, and, it seems, as one and the same act. We regard the appointment of the defendants as being without legal authority.

We are of opinion that the defendants are unlawfully exercising the offices of trustees of said union district, and that the relators are lawfully entitled thereto.

Judgment is ordered to be entered accordingly.