[Civ. No. 133. Third Appellate District.—October 25, 1905.]

In re WILLA NORINE CULP, a Minor, on Habeas Corpus. C. H. CULP, Petitioner, v. FANTASIA F. CULP, Respondent.

JUDGMENT OF SISTER STATE—CUSTODY OF CHILD—REMOVAL TO CALIFORNIA—MODIFICATION—RECITAL OF NOTICE—HABEAS CORPUS—ATTACK UPON JURISDICTION.—Where a decree of divorce in Kansas awarded to the wife the custody of a minor child, without restriction as to residence, and she removed therewith to California, and subsequently the Kansas court, upon recital of notice to plaintiff's attorney, modified the decree by awarding the custody of the child to its grandfather residing in that state, upon petition by him for a writ of *habeas corpus* to recover the custody of the child from its mother in this state, she may attack the modification of the decree for want of jurisdiction, by proof that no notice thereof was in fact given.

ID.—CONSTITUTIONAL LAW—FAITH AND CREDIT TO JUDGMENTS—INQUIRY AS TO AUTHORITY—RECITAL NOT CONCLUSIVE.—The provision of the federal constitution requiring full faith and credit to be given to the judgment of a sister state, presupposes that the court rendering it has acted within the legitimate scope of its authority, and if it was rendered without authority in fact, neither the courts of that state nor of any other are bound by it; and the want of authority may be shown by extrinsic evidence, notwithstanding a recital in the judgment of jurisdictional facts. Such recital is not conclusive.

ID.—LAW APPLICABLE.—Where the law of the sister state required notice to be given of the modification of a decree of divorce awarding the custody of the child, and under the law of both states, as well as the decisions of the federal courts, a judgment rendered in one state may be assailed in another for want of jurisdiction, such modification may be assailed in this state on that ground.

ID.—FINALITY OF JUDGMENT—AUTHORITY TO SERVE NOTICE NOT EXTRATERRITORIAL.—Where the judgment of divorce became final, and the wife, after removal to this state with the child, never submitted voluntarily to the jurisdiction of the Kansas court, and the proceedings to modify the judgment were instituted after her removal, there was no extraterritorial authority in the Kansas court to serve notice upon her to appear or to require persons not within its territory to appear before it.

ID.—JUDGMENT AS TO CUSTODY OF CHILDREN—AUTHORITY OF COURTS OF THIS STATE—HABEAS CORPUS AN INADEQUATE REMEDY.—Judgments relating to the custody of children have no extraterritorial force, and are not conclusive even as evidence in another state. The courts of this state, as *parens patriae* to the minor child, may award its custody to the mother, or other suitable person,

notwithstanding the judgment of a sister state as to its custody, rendered while it was lawfully in this state. The writ of *habeas corpus* is an inadequate and inappropriate remedy for the consideration and final adjustment of the equitable and interstate questions involved. [Per McLaughlin, J., concurring.]

APPLICATION for writ of *habeas corpus.*

The facts are stated in the opinion of the court.

E. C. Ross, and Eugene S. Wachhorst, for Petitioner.

Holl & Dunn, for Respondent.

BUCKLES, J.—Fantasia F. Culp, against whom the writ runs, and William H. Culp, were husband and wife, and the fruit of their marriage was one girl, now five years and seven months old, named Willa Norine Culp. The petitioner is the grandfather of the child, and seeks to get the custody of her through this writ. The said spouses were residents of Shawnee county in the state of Kansas. The said Fantasia F. Culp was plaintiff in a divorce proceeding against her husband in the Shawnee county district court of the third judicial district of the state of Kansas, which court granted her a divorce on the ground of habitual drunkenness of said William H. Culp, and also gave her the custody, education, nurture, control and care of said minor child. This decree was made April 4, 1904, and became final, so far as the divorce was concerned, under the laws of Kansas, on the fourth day of October, 1904. Under and in pursuance of this decree the said Fantasia F. Culp received the possession of said child in the state of Kansas on April 9, 1904, and ever since that date has had said child with her. Said decree contained no restrictions as to the residence of the child, or of its mother, and about October 9, 1904, said mother moved from the state of Kansas to this state, bringing the said minor child with her to Sacramento.

Upon some information, it is not stated what, but without petition therefor being filed, the judge of the said Kansas court made the following order: "Whereas, be it remembered, that on the twenty-eighth day of November, A. D. 1904, in the Shawnee county district court, third judicial district, state of Kansas, before the Hon. Z. T. Hazen, presiding jus-

tice, it being at the September term, 1904, of said court, the following proceedings, among others, were had, to wit: *Fantasia F. Culp, Plaintiff*, v. *William H. Culp, Defendant*, No. 22,240. Now, on this 28th day of November, A. D. 1904, this cause came on to be heard on the court being advised that the minor child, named in the petition as Willa Norine Culp, had been removed from Shawnee county and from the jurisdiction of this court, and the court, being fully advised in the premises, does hereby order that the plaintiff, Fantasia F. Culp, shall on or before the 1st day of January, 1905, bring said child, Willa Norine Culp, into Shawnee county and within the jurisdiction of this court, and said plaintiff is hereby notified that, unless this order is complied with, another order will be made changing the custody of said child, and directing other parties to take said child and bring it within the jurisdiction of this court. Z. T. Hazen, Judge."

On the fifth day of January, 1905, the judge of said Kansas court made the following order, to wit: "Whereas, be it remembered, that on the fifth day of January, A. D. 1905, in the Shawnee county district court, third judicial district, state of Kansas, before the Hon. Z. T. Hazen, presiding judge, it being at the January term, 1905, of said court, the following proceedings, among others, were had, to wit: *Fantasia F. Culp, Plaintiff*, v. *William H. Culp, Defendant*. Now, on this fifth day of January, 1905, upon due and proper notice to the attorney for plaintiff herein, came on to be heard the application of the defendant herein for a modification of the judgment heretofore rendered in this cause on the fourth day of April, 1904, and the court finds: That contrary to the order, decree, and judgment of this court heretofore rendered the plaintiff herein, Fantasia F. Culp, has removed her daughter Willa Norine Culp, whose custody was by said judgment committed to her, the said plaintiff, from and out of the jurisdiction of this court subsequent to the rendition of said judgment. That said Fantasia F. Culp so removed said child in absolute violation of the order of this court, and with the purpose and intent of hindering and obstructing this court in the proper care and custody of said child. That the conduct of said Fantasia F. Culp since the rendition of said judgment in this case has been such that she is no longer a fit person to be intrusted with the custody and care of said

child. That the circumstances render it proper that the said order, committing the custody, control, education, and care of said child to the plaintiff herein, shall be modified and changed, and that C. H. Culp, the grandfather of said child, is a suitable person to be intrusted with her custody, control, care, and education. It is therefore ordered, adjudged, and decreed by the court that the said judgment heretofore rendered in this court on the fourth day of April, 1904, be, and the same is, hereby changed and modified in the following respects, to wit: That it be ordered, adjudged, and decreed that the custody, education, nurture, control, and care of the said Willa Norine Culp be, and the same is, hereby given to C. H. Culp, the grandfather of said child, Willa Norine Culp, and that the said plaintiff, Fantasia F. Culp, and the defendant herein, William H. Culp, either in person or by any agent, relative or representative, are, and each of them is, hereby enjoined from interfering with or disturbing said C. H. Culp in the custody, education, nurture, control, and care of said child, until the further orders of this court. And the said C. H. Culp is hereby empowered and directed to take into his possession the said child, Willa Norine Culp, and provide for its maintenance, education, nurture, and control, and to keep the same within the jurisdiction of this court, unless otherwise ordered by this court. Z. T. Hazen, Judge.''

Then on the sixth day of March, 1905, the court made another order in the same matter, reciting the fact of making the order modifying the decree of April 4, 1904, and directing that the order of January 5, 1905, be ''forthwith carried into effect,'' and further ordered: ''It is therefore hereby ordered, adjudged, and decreed that to the end that said modified order, aforesaid, may be forthwith carried into effect, the sheriff of Shawnee county, Kan., forthwith proceed to take the said child, Willa N. Culp, into his custody, and that he thereupon deliver the said child over to the custody and keeping of the said C. H. Culp, her lawful custodian, according to said modified order, and that said sheriff make immediate return hereof. A. W. Dana, Judge.''

The petitioner claims the recital in the judgment of January 5, 1905, ''upon due and proper notice to the attorney for plaintiff herein,'' is a declaration of the court making such decree that notice was given, and that it conclusively estab-

lishes the fact that said court had jurisdiction to make the
decree. By an inspection of the judgment of April 4, 1904,
by which Fantasia F. Culp was awarded the custody of the
said minor, it is seen that nowhere therein is she commanded
to remain within the state of Kansas, and no other order or
judgment of said court is presented showing any such direc-
tion to her, and we therefore conclude none was made. The
order of November 28, 1904, shows that the judge making
such order knew she had departed from the state of Kansas,
and knew, of course, that no personal service could be had on
her. And in the order of January 5, 1905, which pretends to
modify the original decree and give the child to its grand-
father, there is no pretense that any other notice was given
than to the attorney of plaintiff in the divorce proceedings.
Section 645 of the Code of Kansas provides that, "When a
divorce is granted, the court shall make provision for guard-
ianship, custody, support and education of the minor children
of the marriage, and may modify or change any order in this
respect whenever circumstances render such change proper."
It was held in *Kendall* v. *Kendall*, 5 Kan. App. 688, [48 Pac.
940], a Kansas case, which was an application to have modi-
fied the decree in a divorce case in relation to the support
of the minor children, that "this section gives the court grant-
ing the divorce a continuing jurisdiction over the guardian-
ship, custody, support and education of the minor children
of the parties to the divorce proceedings, and it may be
invoked whenever circumstances render a change of a former
order proper." There was a contention at the hearing in
that case as to how service of notice should be made. The ser-
vice was by service, on the father, of the notice of the motion
which had been made. The court said: "There is some force in
the argument of plaintiff in error that the proper proceeding
is by petition and summons, and not by motion and notice. In
this case however, the plaintiff in error was fully informed
by the motion and notice of the order applied for. The mo-
tion was filed in the original cause, in the same court, the
same judge presiding. The plaintiff in error had full op-
portunity to prepare his defense. He was not misled. The
cause was tried on its merits." It is well to note in passing
that this case was local—that is, all the parties lived in Kan-
sas and were within the jurisdiction of said court; and I ap-

prehend that, when the court said the jurisdiction over the
minor children was continuous, it could only mean continuous
while they remained domiciled within the jurisdiction of
the court.  But it appears from this case, and the others cited
therein, that the court of Kansas deems some notice necessary
when it is sought to modify a decree, in order to give the court
jurisdiction to render a personal judgment, as would be an
order modifying a decree changing the custody of a minor
from one person to another.

Petitioner claims that as this is a collateral attack on the
judgment of January 5, 1905, this court is not permitted to
inquire into the question of the jurisdiction of the Kansas
court to make it, or if such court had jurisdiction over the
person of Fantasia F. Culp, for the reason that jurisdiction
in that court must be presumed, and cites section 1, article IV,
of the federal constitution, which provides that each state shall
give full faith and credit to the judicial proceedings of a
sister state.  I do not question this authority, for even without
this wholesome constitutional provision the comity of states
of this Union requires that each should give full faith and
credit to the judicial proceedings of the other.  But how can
the courts of this state give such faith and credit to the
judicial proceedings of courts in other states until it is known
that such courts have acted within the legitimate scope of
their authority?  It is true that, when the jurisdiction is
free from attack, then the presumption that jurisdiction was
acquired and that such courts have acted within the powers
granted them is all-sufficient, and that the authorities all
hold that way.  If the state courts of Kansas, or of any other
state, render an opinion or judgment they had no right or
power to render, and it is attacked for want of jurisdiction,
then neither the courts of that state nor of any other state
are bound by it, and yet they give it all the credit and
faith it is entitled to.  And this rule is a reasonable one.
Freeman on Judgments, section 565, lays down this rule:
'Courts of record are presumed to act only in accordance
with the authority vested in them by law.  Their judgments
will generally be treated as conclusive on the parties until the
absence of jurisdiction is affirmatively shown.''

The petitioner here is asserting the validity and verity of
the judgment of the court of Shawnee county, Kansas, made

January 5, 1905, and claiming under it to have the right
here in this state to take this little girl of tender years from
its mother, who has it by natural right, and by whatever force
there is in the decree of the Kansas court, made April 4, 1904,
and deliver it over to the grandfather; and it seems to me
that, whatever may be said of the powers of this court under
the writ of *habeas corpus* in such cases, this is an effort to en-
force a foreign judgment in this court. At least the effect
sought is the same. The mother is here resisting such enforce-
ment upon the ground that the court in Kansas had no juris-
diction to make such judgment, it being a proceeding to com-
pel her personally to perform a certain act, to wit, to turn
her child over to another person, when she had no notice of
the pendency of the application for such purpose—that is,
to make such a judgment against her—and did not have her
day in court. To maintain her position she seeks to show that
the court of Kansas did not have jurisdiction to make such
order. After the judgment of divorce became final she never
submitted voluntarily to the jurisdiction of the Shawnee
county court, and it is admitted that she never was served
with notice thereafter, and that she, in fact, removed from
the state of Kansas before the proceedings were instituted
which led up to the judgment which she now assails. The
general rule in such cases is that, if a party does not submit
himself voluntarily, then, before the court can rightfully
exercise jurisdiction over his person, it must be authorized to
require him to appear before it and submit to its judgment in
that action or proceeding, and the process requiring such
appearance must be issued and served upon him in substan-
tial compliance with the law, and the authority to serve is
restricted to the territory of the state where issued, and the
court has no power to require persons not within such terri-
tory to appear before it. In support of this doctrine I cite
Freeman on Judgments (section 120a) as follows: "There-
fore any personal judgment which a state court may render
against one who did not voluntarily submit to its jurisdiction,
and who is not a citizen of the state, nor served with process
within its borders, no matter what the mode of service, is
void, because the court had no jurisdiction over his person."
A very strong case showing the right to assail a foreign judg-
ment on the ground of the want of jurisdiction comes from

the supreme court of the state of Kansas. (*Thorn* v. *Salmon-son*, 37 Kan. 441, [15 Pac. 588].) There the plaintiff was married to one Karl Johan Thorn in the kingdom of Sweden in the year 1852. The couple lived together as husband and wife, and six children were the fruit of their marriage. In 1862 he separated from her, going to a distant part of the kingdom, where he procured a divorce from her, without giving her any notice, although the decree recited notice by publication for the period of one year before the judgment of divorce was rendered. In a subsequent proceeding, where both husband and wife were parties, the validity of the decree of divorce was questioned, and was determined by the highest court of the kingdom, both parties being residents there, and both being heard. At that time the man, husband, had married this defendant, Salmonson. Plaintiff here stated in that proceeding that she did not wish to disturb the marriage of her late husband to this defendant, and the supreme court of Sweden affirmed the judgment of divorce. The matter was then taken before his Royal Highness and was again affirmed. Thorn and his second wife then emigrated to America, and lived together as husband and wife in McPherson county, Kansas, until about 1881, when he died. The palintiff sued, asking to be adjudged the lawful widow of deceased Thorn, and entitled to his estate. The Kansas court held as follows: "While the judgment of divorce appears to have been granted by a competent tribunal, which had jurisdiction of the subject matter as well as of the parties, and is therefore entitled to liberal presumptions, it is not so far conclusive as to preclude the plaintiff from showing that it was rendered without jurisdiction, or was fraudulently obtained. The reply specifically denies that the plaintiff was ever served with process or had her day in court. . . . If in truth there was no service, personal or otherwise, and she had never been given an opportunity to be heard, she cannot be bound nor affected by any of the orders or judgments made in these proceedings. A foreign judgment rendered without jurisdiction may be assailed in either a direct or collateral proceeding. Although the recital in the judgment that service was made raises a strong presumption in favor of the jurisdiction and of the truth of the recitals, yet the plaintiff may show by extrinsic evidence, if she can, that no service was made. Strong proof

will be required to overthrow the presumption of jurisdiction raised by the recitals; but if it is clearly shown that the plaintiff was not served with process, and did not voluntarily appear or submit to the jurisdiction of the court, the recitals are of no avail.'' A number of cases are cited in said decision sustaining this doctrine. It is the law of Kansas, therefore, that when a party is seeking the enforcement of a foreign judgment in that state, or seeking some benefit thereunder, the party resisting or defending may assail such judgment by showing want of service, and therefore a lack of jurisdiction to render such judgment.

Petitioner in his argument claims that, if extrinsic evidence can be received to contradict the recital of notice in the Shawnee county court's judgment, then it must appear, first, that notice is necessary under the Kansas law, and, second, that no notice sufficient in the Kansas practice was given. The necessity of notice is answered in a Kansas case decided November 8, 1902. (*Miles* v. *Miles*, 65 Kan. 676, [70 Pac. 631].) This was an application, made two years after the decree of divorce, for a modification of the decree, so that the husband might be compelled to contribute to the support of his children, which had been awarded to the custody of the mother. In that case, quoting the section of the Code of Civil Procedure (645) heretofore referred to, the court said: ''This section leaves the matter entirely in the hands of the court. He may at any time, upon proper notice, change any former order made in reference to these matters by adding to or taking from the burdens of either party relative to the same.'' Thus it will be seen that in Kansas, when an application is made to the court to modify a decree or judgment relative to the custody and care of minor children in a divorce case, there must be notice served.

As to the second contention, that no notice was given sufficient in the Kansas practice: The judgment says service was had on the attorney. The deposition of H. G. Larimer, who was the attorney of respondent in the divorce proceedings, was taken. He says: ''The day before she left here she called upon me to bid me good-by, and said in leaving, 'If any trouble comes up here in this case, I will want you to look after it for me.' To that extent I represent her still.'' He was asked as follows: ''State whether any notice was ever

given to you of said application to modify the judgment aforesaid, rendered on the fourth day of April, 1904, in said action.'' To which he answered: ''No notice of any such application was ever given to me, either verbally or in writing. The practice in our court is that the attorneys, who are making application or asking for orders, either, shall serve a notice upon the opposing attorney, when, the same is published in the 'Legal News,' a paper published in the city of Topeka. Through neither source did I ever have any notice of any such application.'' Mr. Larimer states further in his deposition that in a conversation with Judge, Hazen, who made the modifying order, which conversation was held between the 1st and the 15th of October, 1904, Judge Hazen said: ''If the Culps make any application ordering the child brought back here, I will grant it. I will turn the child over to them.'' Mr. Larimer never heard anything more of the application or the order, until the latter part of March, 1905, and declares again in his deposition that no notice of any kind was ever served on him, and that he was not in the courtroom when the order was made. The deposition of A. M. Harvey, who was the attorney for C. H. Culp, and who drew up the order of January 5, 1905, was taken, and he says he filed no application for the modification of the judgment of April 4, 1904, and that he has no personal knowledge of any notice having been given to the attorney, Larimer. Had there been any notice served upon Mr. Larimer, who would know better than Mr. Harvey, who was acting for petitioner? It appears that all the service of any kind in these proceedings was that the judge had said to him that, if the Culps applied for an order, he would make it; and in the light of Mr. Larimer's testimony, uncontradicted as it is, and supported by the testimony of Mr. Harvey, this must be the service the judge had in mind when he directed the recital in the judgment. This was no service at all, and no notice that any application had been filed or would be heard on January 5, 1905, or on any other day. It therefore follows, it seems to me, that the courts of Kansas have established the rule that, when a domestic or foreign judgment is assailed on the ground of want of jurisdiction, as this is here, the party assailing it may prove by extrinsic evidence the want of jurisdiction. Such courts have also established the doctrine

that the application to modify a decree awarding the custody of minor children in a divorce proceeding must be noticed to the party to be bound. The fact appears in the case at bar that there was no service of notice, and no notice at all, given to anyone of the application to modify, and that the judgment made thereunder has no binding effect on the said Fantasia F. Culp, assailed as it is, either in Kansas or here.

Neither the rule of comity, supposed to exist beween sister states, nor provisions of the federal constitution requiring each state to give full faith and credit to the judicial proceedings of a sister state, warrants this court in saying, under the attack and showing made as to jurisdiction, that, because the said judgment recites that notice was given, the jurisdiction of the Shawnee county district court is conclusively established and cannot be inquired into. But this whole question of whether or not the jurisdiction of a foreign judgment can be inquired into was determined by the United States supreme court in the case of *Thompson* v. *Whitman,* 18 Wall. 457, where that court said, in substance, that the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction, and, if it be shown that such facts did not exist, the record will be a nullity, notwithstanding it may recite they did exist. This has been followed in every case rendered by the United States supreme court since that time, when the question was involved, and is the leading authority on that point in the United States. Coming now to the decisions in our own state: There are a number holding that jurisdiction may be assailed, but the citation of the leading case I deem sufficient. This is *In re James,* 99 Cal. 375, [37 Am. St. Rep. 60, 33 Pac. 1122], and is cited by both parties. William E. James married the petitioner, Sarah M., in the state of New York in 1859, and they lived together in New York until 1871, when they separated. Some time afterward he went to the state of Missouri, and in 1874 procured a divorce from Sarah M., who had remained in New York. She had no notice of the pendency of the action, though the service was by publication. James removed to and became a resident of this state, and in February, 1883, married Leonora A. King, of Santa Cruz, this state. He lived with his last wife until about the time of his death, which occurred in April, 1887. Letters of

administration on his estate were issued to the said Leonora A. James.   Sarah M. James, the New York wife, appealed from an order of the court refusing to revoke the letters issued to Leonora A., and also from an order refusing to grant letters to her.   The petitioner contended that the court in Missouri had no jurisdiction to render the judgment of divorce, upon three several grounds, the second of which was that "the deceased, James, was not a resident of the state of Missouri for one year next before the commencement of the action resulting in the decree; such residence being necessary under the laws of that state in order to give the court juris-diction in actions for divorce."   This was a collateral attack upon the Missouri judgment, and our supreme court says, at the top of page 377 of 99 Cal., [page 1123 of 33 Pac. (37 Am. St. Rep. 60)] : "In regard to the second ground of objec-tion to the decree in *James* v. *James,* we agree with appellant that it is competent to collaterally impeach the record of a judgment rendered in another state by extrinsic evidence showing that the facts necessary to give the court pronouncing it jurisdiction to proceed did not exist; and this is true, al-though the record sought to be impeached may recite the existence of such jurisdictional facts"—citing *Thompson* v. *Whitman,* 18 Wall. 457, *Starbuck* v. *Murray,* 5 Wend. 148, [21 Am. Dec. 172], *Grover & Baker Machine Co.* v. *Radcliffe,* 137 U. S. 287, [11 Sup. Ct. 92], and other cases.   There was a substantial conflict in the evidence as to whether James was a citizen of Missouri or not, or a *bona fide* resident therein for one year, and upon that ground the court held the decree valid.   This case has been followed in all the well-considered cases in this state involving the same question since the rendition of that opinion, and must be considered the leading case in this state.   But, independent of this deci-sion, the Code of Civil Procedure, as adopted in 1872, and now in force, provides as follows:

"Sec. 1915. The effect of the judgment of any other tribu-nal of a foreign country having jurisdiction to pronounce the judgment, is as follows: (1) In case of a judgment against a specific thing, the judgment is conclusive upon the title to the thing.   (2) In case of a judgment against a person, the judgment is presumptive evidence of a right as between the parties and their successors in interest by a subsequent title,

and can only be repelled by evidence of a want of jurisdiction, want of notice to the party, collusion, fraud, or clear mistake of law or fact."

It will thus be seen that, when a foreign judgment is assailed, its recitals are but presumptions which may be overcome by extrinsic evidence showing such recitals of jurisdiction to be untrue. But as if this was not enough the code further provides:

"Sec. 1916. Any judicial record may be impeached by evidence of a want of jurisdiction in the court or judicial officer, of collusion between the parties, or of fraud in the party offering the record, in respect to the proceedings."

The further citation of authorities seems useless.

The writ is dismissed.

Chipman, P. J., concurred.

McLAUGHLIN, J.—I concur in the order dismissing the writ, and in the conclusions voiced in the main opinion touching jurisdiction and the right of this court to inquire into such jurisdiction. But I am unwilling, by silence, to lend implied consent to the proposition that the judgment relied upon as conclusive of petitioner's right to the custody of this child could, under any state of facts, be enforced in this state through the medium of a writ of *habeas corpus.* This is exactly what petitioner seeks to accomplish by this proceeding. He insists that this court has no alternative, but must execute said judgment by granting his petition, because the federal constitution and laws require that full effect must be given to judgments rendered in a sister state. Granting his premise, the conclusion does not follow.

Judgments rendered in Kansas have no extraterritorial effect as judgments. (*Cole* v. *Cunningham,* 133 U. S. 107, [10 Sup. Ct. 269]; Black on Judgments, sec. 682.) Judgments rendered there will not be enforced here, unless a judgment thereon is recovered in this state. (13 Am. & Eng. Ency. of Law, p. 986; Cooley's Constitutional Limitations, p. 43, note; Freeman on Judgments, secs. 559, 564, 575; *Brown* v. *Campbell,* 100 Cal. 646, [38 Am. St. Rep. 314, 35 Pac. 433]; *McElmoyle* v. *Cohen,* 13 Pet. (U. S.) 312; *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, [8 Sup. Ct. 1370]; *Huntington* v. *Attrill,* 146 U. S. 657, [13 Sup. Ct.

224] ; Code Civ. Proc., sec. 1913.)   Such judgments will, as
a general rule, be accepted as conclusive proof of rights final-
ly adjudicated by courts of a sister state having jurisdiction
of the parties and subject matter.   (*Huntington* v.
*Attrill*, 146 U. S. 657, [13 L. ed. 224] ; *Hanley* v. *Donoghue*,
116 U. S. 1, [6 Sup. Ct. 242] ; Freeman on Judgments, 559;
Cooley's Constitutional Limitations, p. 586; 13 Am. & Eng.
Ency. of Law, p. 983.)   But, unfortunately for petitioner's
contention, judgments relating to the custody of children fall
within an exception to this general rule.   Such judgments
have never been accorded conclusive force, even as evidence,
in another state.   No person has an absolute right to such
custody, for the welfare of the third party—the minor—is
always an open and paramount question, and courts of an-
other state may, and will, award the custody of minors, re-
gardless of such judgments.   (*Kentzler* v. *Kentzler*, 3 Wash.
16.), [28 Am. St. Rep. 21, 28 Pac. 370] ; *In re King*, 66 Kan.
698, [97 Am. St. Rep. 399, 72 Pac. 263] ; *Woodworth* v.
*Spring*, 86 Mass. 321; *Kline* v. *Kline*, 57 Iowa, 386, [42 Am.
Rep. 47, 10 N. W. 825] ; *Matter of Rice*, 42 Mich. 530, [4
N. W. 284] ; *Matter of Heather Children*, 50 Mich. 261,
[15 N. W. 487] ; *In re Stockman*, 71 Mich. 192, [38 N. W.
876] ; *Kraft* v. *Wickey*, 4 Gill & J. (Md.) 332, [23 Am.
Dec. 569] ; *Williams* v. *Storrs*, 6 Johns. Ch. 340, [10 Am.
Dec. 343] ; Black on Judgments, sec. 861; 2 Bishop on
Marriage and Divorce, 2d ed., p. 604; 13 Am. & Eng. Ency.
of Law, pp. 960, 965, 968; Cooley's Constitutional Limita-
tions, pp. 497, 584.)   If the jurisdiction of the court and
absolute verity of the modified judgment before us be
granted, it could hardly have greater legal effect or confer
greater powers than an order constituting the petitioner
guardian of the person of this minor.   If this be true, then
our courts are not bound to recognize either his authority or
the judgment on which it rests.   (Code Civ. Proc., sec. 1913;
*Hoyt* v. *Sprague*, 103 U. S. 631; *Morgan* v. *Potter*, 157 U.
S. 197, [15 Sup. Ct. 590] ; *Curtis* v. *Smith*, 6 Blatchf. 537,
[Fed. Cas., No. 3505] ; Cooley's Constitutional Limitations,
p. 44; 13 Am. & Eng. Ency. of Law, p. 966, and notes; cases
cited *supra*.)

But, waiving this rule, which seems conclusive of the ques-
tion before us, and giving this judgment all the effect

claimed for it, by the most *ultra* authority supporting it, as evidence, in the courts of another state, we are forced to the conclusion that, even in a direct proceeding to obtain a judgment thereon, the courts of this state would be at liberty to disregard it. It cannot be claimed that it must be given greater effect here than in Kansas. It could be modified there whenever circumstances rendered such change proper. (Dassler's Kan. Gen. Stats. 1901, sec. 5138.) It is as inconclusive here as there. It would be open to inquiry and change in that state, and it is no more sacred in this. (*In re King*, 66 Kan. 698-700, [97 Am. St. Rep. 399, 72 Pac. 263].) In short, such judgments are universally held subordinate to the welfare of the child and any court in this state might act as *parens patriae* to this child, and award its custody to the mother, or other proper person, notwithstanding this judgment. (Black on Judgments, sec. 861; Code Civ. Proc., sec. 1913; Cooley's Constitutional Limitations, pp. 496, 497, 584; *Avery* v. *Avery*, 33 Kan. 1, [52 Am. Rep. 523, 5 Pac. 418]; *In re Bort*, 25 Kan. 308, [37 Am. Rep. 255]; *In re King*, 66 Kan. 698, [97 Am. St. Rep. 399, 72 Pac. 263]; *People* v. *Allen*, 40 Hun (N. Y.), 611; *Dubois* v. *Johnson*, 96 Ind. 6; *De La Montanya* v. *De La Montanya*, 112 Cal. 116, [53 Am. St. Rep. 165, 44 Pac. 345]; *De La Montanya* v. *De La Montanya*, 112 Cal. 133, [44 Pac. 354].) This being true of a direct proceeding, it seems to me that *habeas corpus* is not adapted to the hearing of equitable and interstate questions involved, and that it cannot be extended to such cases without inconsistency and incongruity. All authorities agree that *habeas corpus* will extend only to the point of freeing the minor from unauthorized restraint. But it is said by those supporting its use in cases involving the custody of children that, the office of the writ having been accomplished, the court will go beyond this, and exercise its equitable powers to protect and conserve the welfare of the minor whose custody is sought. This, confessedly, involves a supplemental inquiry and adjudication equitable in its nature, based on considerations entirely foreign to, and beyond the scope and purpose of, this writ. It is an admission that the writ is inadequate in such cases; and even the authorities sanctioning its use admit such inadequacy, and confess that *habeas corpus* "gives no jurisdiction to

appoint guardians of infants.'' (Church on Habeas Corpus, secs. 445, 446, 451, 452; Spelling on Extraordinary Relief, secs. 1236-1242; Hurd on Habeas Corpus, pp. 476-534.) It seems more logical to adopt the course pursued by Southard, J., in *State* v. *Cheesman,* cited by the last-named author at pages 554 to 556 of his valuable treatise. (See, also, Church on Habeas Corpus, sec. 452.)

*Habeas corpus* has its legitimate and time-honored scope, and so peculiar is the purpose, nature, and dignity of this writ that it cannot be coupled with other remedies without creating confusion. Even an enlightened and commendable desire to abolish useless forms cannot be carried to the extent of making every writ an agency to right every wrong and vindicate every right without obliterating distinctions designed to prevent confusion and chaos. This is illustrated in the record and briefs before us. The petition and return both show that a similar application was heard and denied by the superior court of Sacramento county. It is argued by the attorneys for Mrs. Culp that the decision of Judge Shields is final, while the attorneys for the petitioner contend that it has no binding force whatever in this or any other court. The authorities generally seem to hold that such decisions are *res judicata.* (Freeman on Judgments, sec. 324; Church on Habeas Corpus, sec. 387; Spelling on Extraordinary Relief, sec. 1152.) But under our practice repeated applications for a writ of *habeas corpus* may be made, and it is at least doubtful whether an appeal from the decision of the learned judge of the superior court would lie. This is hardly reconcilable with the theory of finality, and points a reason why this proceeding is peculiarly inappropriate and inadequate to the determination of such questions under the practice in this state. If this remedy may be invoked, then the supplemental inquiry and adjudication is a necessary corollary under all the authorities sanctioning such practice. If the decision rendered on this supplemental hearing be not final, then the equitable powers of a court can be invoked, and its decision will count for nothing, even in the eyes of the person who sought and was denied its aid. Under our system the petitioner cannot be prevented from making repeated applications. He may, perchance, be dissatisfied with the decision of this court, and,

if so, he may apply to another department of the superior
court of Sacramento county, or to the supreme court, for
relief denied him here. But, if this be the rule, how fares
the other party to this proceeding? Compelled to submit
to repeated inquiries involving her character and fitness to
retain the custody of her child, the first adverse decision will
send her out of the court without child, without appeal,
and justly without confidence in the theory that all stand
equal before the law. This is not fair or just. It cannot
be the law. It might be said that she, in turn, could resort
to repeated applications of the same nature; but, if this be
admitted, it furnishes an unanswerable argument against
such a practice. In my opinion the petitioner should be
compelled to seek relief through ordinary legal channels, be-
cause the writ of *habeas corpus* is inappropriate and inade-
quate to the proper consideration and final adjustment of
important questions and rights here involved.

I am also unwilling that the decision in which I concur
shall, under any circumstances, be considered as implied au-
thority sustaining the doctrine that the district court of
Shawnee county, Kansas, retains jurisdiction of this child
during her minority, regardless of her presence within or ab-
sence from that state. There can be no question that dur-
ing the time occupied by the proceedings leading to the
modified judgment this minor and her mother were in Cali-
fornia. The modified judgment shows on its face that the
minor was not within the jurisdiction of the court. A de-
cree of this kind can only be made, or continue operative,
while the child "remains within the jurisdiction." (Cooley's
Constitutional Limitations, p. 584; *De La Montanya* v. *De
La Montanya,* 112 Cal. 133, [44 Pac. 354] ; Code Civ. Proc.,
sec. 1913.) The mother, after her divorce, certainly had a
right to fix her domicile wherever she pleased, and I can
see no good reason, in law or logic, why she could not change
the domicile of the child by taking her with her. I can find
nothing in the judgment, the laws of Kansas, or the general
current of authority to forbid such removal or change.
Some courts have held that, where the other parent is per-
mitted to see the child, the court may forbid removal from
the jurisdiction, and one decision is to the effect that forbid-
dance is implied in such a case. (*Campbell* v. *Campbell,* 37

Wis. 206; *Hewitt* v. *Long*, 76 Ill. 399; *Miner* v. *Miner*, 11
Ill. 43.)   This rule is founded on a substantial reason, and
I entertain no doubt that, under such circumstances, comity
alone would prompt the courts of this state to aid the courts
of another state in conserving rights reserved to the other
party to the litigation.   But here the original decree abso-
lutely debarred the husband and all his agents and kin from
seeing, or in any way interfering with the custody of, this
child, and I have found no case, and believe none can be
found, which holds that, under these conditions, the minor
may not be taken from the jurisdiction.   (*Griffin* v. *Griffin*,
18 Utah, 98, [55 Pac. 88] ; *Adams* v. *Adams*, 62 Ky. 169;
*Woodworth* v. *Spring*, 86 Mass. 323-326; *In re D'Anna*, 117
N. C. 462, [23 S. E. 431].)   In the case of *Stetson* v. *Stet-
son*, 80 Me. 483, [15 Atl. 60], this right is expressly recog-
nized, but the court also laid down the inconsistent and un-
tenable proposition that, notwithstanding such right, the ju-
risdiction continues.   There is nothing in *Estate of Henning*,
128 Cal. 214, [79 Am. St. Rep. 43, 60 Pac. 762] , to support
the opposite view.   That decision rests upon the express pro-
hibition found in section 248 of the Civil Code, and on the
presumption that no change of domicile was effected by the
permissive removal.   Had Mrs. Culp fled from Kansas for
the apparent purpose of evading a law or judgment of that
state, a very different question would be presented.   But I
know of no rule of law or reason which prevents a person
from doing that which no law or court has forbidden.

It may be said that this prohibition is implied from the
power to modify the judgment.   But, if implications are to
be indulged, it is equally as reasonable to construe section
5138 of Dassler's General Statutes of 1901, as permitting
such modification at any time while the minor remained
within the jurisdiction.   We have seen that most of our
courts, including those of Kansas, recognize the rule that
other courts may consult the welfare of the child, regardless
of judgments rendered in another jurisdiction.   This rule
is irreconcilably in conflict with the idea that the child may
not be removed from the state, and that the jurisdic-
tion is continuing and extraterritorial.